## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYNE MEMORIAL UNITED METHODIST CHURCH,**    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-4129** |
| **CHURCH MUTUAL INSURANCE COMPANY, S.I.,**    **Defendant** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court are Cross Motions for Partial Summary Judgment filed by Plaintiff, Rayne Memorial United Methodist Church ("Plaintiff"),[1] and Defendant, Church Mutual Insurance Company, S.I. ("Defendant").[2] Plaintiff requests the Court to grant summary judgment on the issue of Defendant's bad faith under L.a. R.S. §§ 22:1892 and 22:1973 and reserve the issue of damages and penalties for trial.[3] Defendant seeks dismissal of "any and all claims" of Plaintiff asserted under L.a. R.S. §§ 22:1892 and 22:1973.[4] The cross motions are opposed.[5] The parties filed replies.[6]

## BACKGROUND

This matter arises out of a Hurricane Ida insurance coverage dispute. Defendant issued an insurance policy to cover Plaintiff's church property on St. Charles Avenue in New Orleans, Louisiana.[7] The Policy provided coverage for numerous buildings on the property, including the Sanctuary, which is the original church building.[8]

---

[1] R. Doc. 64.
[2] R. Doc. 66.
[3] R. Doc. 64, p. 2.
[4] R. Doc. 66-1, p. 1.
[5] R. Docs. 75, 88 (Defendant's opposition and amended opposition); R. Doc. 78 (Plaintiff's opposition).
[6] R. Doc. 94 (Plaintiff's reply); R. Doc. 87 (Defendant's reply).
[7] R. Doc. 64-3 ("the Policy").
[8] *Id.*

Plaintiff sued Defendant on August 24, 2023 for breach of contract as well as statutory penalties and attorneys' fees pursuant to La. R.S. 22:1892 and 22:1973.[9] Plaintiff alleges that, after the storm, it provided Defendant with notice of the loss on September 1, 2021.[10] Plaintiff alleges Defendant's adjuster, Amy Tomb of the company G4S, performed an initial inspection of the property on September 11, 2021,[11] but prepared a "severely underscoped" estimate, "miss[ing] much of the most heavily damaged portions of the Properties."[12] Defendant's inspectors completed "multiple inspections,[13] with final inspection completed on [October 21, 2021] specifically to inspect [the] church pipe organ."[14] Plaintiff alleges that, following the initial inspection, Defendant "agreed to pay for $178,000 in repairs to Rayne's organ, paid for interior damage and roof repair for some of Rayne's [church] buildings," and paid for remediation of the property.[15] Defendant represents it received the final inspection report on November 30, 2021.[16] On December 7, 2021, after applying a $562,450 deductible, Defendant tendered $110,652.21 for Plaintiff's losses.[17] Plaintiff represents this payment "did not include any amount at all for the significant roof damage and resulting interior damage to the Sanctuary."[18]

On April 15, 2022, counsel for Plaintiff contacted Defendant to re-inspect the property.[19] Defendant retained building consultant Robert Spengler of Unified Building Sciences, Inc. ("UBS"), engineer Tyson Cox of YA Engineering Services ("YAES"), and Jim Camacho, Church Mutual's in-house adjuster, to reinspect the property beginning on May

---

[9] R. Doc. 1.
[10] R. Doc. 64-2, ¶ 2 (citing R. Doc. 64-4, p. 1).
[11] R. Doc. 64-5, p. 1.
[12] R. Doc. 1, p. 3.
[13] *See* R. Doc. 66-2, p. 1 (dates of various inspections).
[14] R. Doc. 64-5, p. 1.
[15] R. Doc. 64-1, p. 7.
[16] R. Doc. 66-2, ¶ 8 (citing R. Doc. 66-8); R. Doc. 66-7, p. 30.
[17] R. Doc. 64-7. The check is dated December 6, 2021.
[18] R. Doc. 64-1, p. 8.
[19] R. Doc. 64-8.

10, 2022, and concluding on June 16, 2022.[20] Plaintiff represents these 2022 reinspections "reflected that there was a storm-caused opening in the roof of the Sanctuary, which was supported with photographic documentation."[21] A July 14, 2022 claims note entry by James Camacho states that he

> [r]eceived initial report from engineer . . . . the insured and attorney requested that all the buildings on the policy be inspected . . . . there is little evidence that there was damage from the storm to those structures . . . . The original . . . estimate was not sufficient for the extent of the damage that we saw on our inspection. We will review . . . to see if our reserve will need increase on loss and any additional ACV needs to be covered and paid.[22]

On September 12, 2022, Spengler completed his damages estimates based on his reinspection of the properties.[23] On September 21, 2022, Defendant received and reviewed the final reinspection reports.[24] A claims note entry by James Camacho, dated September 21, 2022, lists out additional damages to church buildings and provides "[t]he total damage is $472,271.29 not including roof and organ. Will be updating . . . on this loss and preparing for additional reserve request and an undisputed ACV payment when . . . complete."[25] After approving additional payment on October 24, 2022,[26] Defendant tendered a second payment of $321,669.17 on November 4, 2022.[27] Plaintiff represents this payment did not include "any funds for Rayne's storm-caused opening in the roof,"[28] which caused extensive interior damage to the Sanctuary.[29]

Plaintiff retained Guaranty Sheet Metal to conduct an inspection of the Sanctuary roof on November 16 and 17, 2022, which documented "extensive damage to the roof of

---

[20] R. Doc. 64-9; R. Doc. 66-2, ¶¶ 11, 12.
[21] R. Doc. 64-2, ¶ 6 (citing R. Doc. 64-9). Defendant disputes this fact. R. Doc. 88-1, ¶ 6.
[22] R. Doc. 66-7, p. 4.
[23] R. Doc. 64-10.
[24] R. Doc. 66-2, ¶ 13; R. Doc. 64-4 (claim notes); R. Doc. 66-7, p. 3 (same).
[25] R. Doc. 64-4, pp. 6-7.
[26] *Id.* at p. 6; R. Doc. 66-7, p. 3.
[27] R. Doc. 66-2, ¶ 15 (citing R. Doc. 66-9).
[28] R. Doc. 64-2, ¶ 8.
[29] R. Doc. 64-1, p. 10.

the Sanctuary building."[30] Plaintiff provided this report to Defendant on March 7, 2023.[31] A claims note dated April 12, 2023 states that "[t]he insured's attorney has requested additional monies in this loss . . . as the contractor billing is stating that additional tiles are broken due to the storm which we do not agree with. We have asked for a repair invoice in the past. Awaiting response from attorney on our dispute of the estimate presented by Guaranty Roof."[32]

Litigation commenced in August 2023.[33] Plaintiff argues that Defendant's most recent tender in 2022 "failed to account for the full scope of the damage to the Sanctuary roof."[34] Plaintiff argues that Defendant's "own expert reports confirm that it has underpaid Rayne,"[35] but Defendant has made no additional payments. Plaintiff argues that, not only has Defendant failed to adequately compensate Plaintiff under the Policy, but "[i]n an effort to justify its failure to timely and adequately compensate Rayne," Defendant has "compounded its bad faith by misrepresenting pertinent facts related to coverage, misrepresenting policy language to fits its arguments, and quoting inapplicable liability provisions to deny or narrow coverage."[36] Overall, Plaintiff argues that Defendant's failure to adequately investigate damage to the properties and its agents' misrepresentations of available coverage "is bad faith as a matter of law."[37]

Defendant argues "Plaintiff originally claimed damage to one building, that morphed into damage to additional buildings over the ensuing 10 months."[38] Defendant

---

[30] *Id.* ¶ 10 (citing R. Doc. 64-12).
[31] *Id.* ¶ 10 (citing R. Doc. 64-11).
[32] R. Doc. 66-7, p. 2.
[33] R. Doc. 1.
[34] R. Doc. 64-1, p. 11.
[35] *Id.* (citing R. Doc. 64-14 (April 8, 2025 YAES litigation report authored by Tyson Cox); R. Doc. 64-15 (April 8, 2025 UBS report authored by Robert Spengler)).
[36] *Id.* at pp. 12-13.
[37] R. Doc. 64-1, pp. 22-23.
[38] R. Doc. 88-1, ¶ 5.

further argues that Rayne board meeting minutes reflect preexisting plans to repair various church buildings prior to Hurricane Ida, including roof repairs.[39] Defendant argues there are "legitimate and substantial questions regarding the causation of roof and interior damage to all three buildings due to prior conditions and failure to mitigate."[40] As a result, Defendant argues there are substantial, reasonable, and legitimate questions as to Plaintiff's losses and the extent of Defendant's liability, which is "fatal" to Plaintiff's bad faith claims.[41]

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42] "An issue is material if its resolution could affect the outcome of the action."[43] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[44] All reasonable inferences are drawn in favor of the nonmoving party.[45] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[46]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would

---

[39] R. Doc. 66-1, p. 8 (citing R. Doc. 66-10, August 16, 2021 Board Meeting Minutes).
[40] *Id.* at p. 10.
[41] *Id.* at p. 17.
[42] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[43] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[44] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[45] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[46] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[47] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[48]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[49] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[50] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's

---

[47] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[48] *Celotex*, 477 U.S. at 322-24.

[49] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[50] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[51] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[52] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[53] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[54]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[55]

## LAW AND ANALYSIS

Both parties seek summary judgment on the issue of Defendant's bad faith. La. R.S. 22:1973 states that "[a]n insurer owes to his insured a duty of good faith and fair

---

[51] *Celotex*, 477 U.S. at 332-33.
[52] *Id.*
[53] *Id.* at 332-33 & n.3.
[54] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[55] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

dealing."[56] Pursuant to La. R.S. 22:1892, insurers "shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss from the insured or any party in interest."[57] If an insurer fails to make such a payment and the failure "is found to be arbitrary, capricious, or without probable cause," the insurer is subject "to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due . . . as well as reasonable attorney fees and costs."[58] "A party seeking statutory penalties under [§ 1892] is required to establish that: (1) the insurer received satisfactory proof of loss, (2) the insurer failed to pay the claim within thirty days of receipt of the proof of loss, and (3) the insurer's failure to pay the claim was arbitrary, capricious, or without probable cause.[59] Because the statute is penal in nature, it must be strictly construed.[60] "Under a strict construction, every doubt must be resolved against the imposition of the penalty."[61]

### I. There are genuine issues of material fact as to when Defendant received satisfactory proof of loss and whether Defendant acted arbitrarily and capriciously in handling Plaintiff's claim.

The parties filed cross motions for summary judgment on whether Defendant's failure to pay certain sums under the policy was "arbitrary, capricious, or without probable cause" under § 22:1892.[62] Plaintiff argues that Defendant acted in bad faith in handling its claim. Specifically, Plaintiff argues that it gave Defendant "prompt notice of the loss on September 1, 2021," but Defendant conducted a "deficient" initial inspection

---

[56] La. R.S. 22:1973A., *repealed by*, Acts 2024, No. 3, § 2, eff. July 1, 2024.

[57] La. R.S. § 22:1892(A)(1).

[58] *Id.* § 22:1892(B)(1).

[59] *Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 787 F.3d 276, 285 (5th Cir. 2015) (citation omitted); *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 299 (5th Cir. 2009) ("A refusal to pay the full amount claimed will not be arbitrary and capricious when the dispute has a good faith basis.").

[60] *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1020 (La. 2003); *Feingerts v. La. Citizens Prop. Ins. Corp.*, 265 So.3d 62, 66 (La. Ct. App. 4th Cir. 2019).

[61] *Schexnaildre v. State Farm Mut. Auto. Ins. Co.*, 184 So. 3d 108, 112 (La. Ct. App. 1st Cir. 2015) (citing *Bowens v. General Motors Corp.*, 608 So.2d 999, 1005 (La. 1992)).

[62] R. Doc. 64; R. Doc. 66.

and issued an "insufficient, belated" tender.[63] Plaintiff argues Defendant continued to mishandle Plaintiff's claim under the Policy in failing to issue a timely second payment and account for the proper extent of losses.[64] Plaintiff further argues defense expert Cusimano has "compounded" Defendant's bad faith by misrepresenting applicable coverage under the Policy.[65] Defendant asserts it had substantial, legitimate questions about the extent and amount of loss such that its failure to pay within the statutory time period and dispute of coverage owed "was not arbitrary, capricious or without probable cause."[66]

"Louisiana's requirements for proofs of loss are flexible, focusing on notice."[67] "So long as the insurer obtains sufficient information to act on the claim, the manner in which it obtains the information is immaterial."[68] "Satisfactory proof of loss" is only that which is "sufficient to fully apprise the insurer of the insured's claims" and extent of the damage.[69] The burden is on the insured to prove that it provided satisfactory proof of loss. Whether the insured provided satisfactory proof of loss is a question of fact.[70] "Such a question is inappropriate for resolution at the summary judgment stage," because of the factual disputes highlighted.[71]

---

[63] R. Doc. 64-1, p. 7.

[64] *Id*. at pp. 7-12.

[65] *Id*. at pp. 12-13.

[66] R. Doc. 66-1, p. 13 (citing *United Pentecostal Church v. Church Mutual Ins. Co.*, 119 F.4th 417, 428 (5th Cir. 2024)).

[67] *Cotton v. Certain Underwriters at Lloyd's of London*, 831 F.3d 592, 596 (5th Cir. 2016) (citing *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1119-20 (La. 2008)).

[68] *Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 787 F.3d 276, 286 (5th Cir. 2015).

[69] *First Baptist Church of Iowa v. Church Mut. Ins. Co., S.I.*, 105 F.4th 775, 794 (5th Cir. 2024) (citing *La. Bag Co.*, 999 So. 2d at 1119); *Aghighi v. La. Citizens Prop. Ins. Corp.*, 119 So.3d 930, 934 (La. Ct. App. 4th Cir. 2013).

[70] *Boudreaux v. State Farm Mut. Auto. Ins. Co.*, 896 So. 2d 230, 236 (La. Ct. App. 4th Cir. 2005); *Anco*, 787 F.3d at 286-87.

[71] *Causey v. State Farm Mut. Auto. Ins. Co.*, No. 18-6467, 2019 WL 5551900, at *3 (E.D. La. Oct. 28, 2019) (finding that it was inappropriate to resolve the factual question of whether the plaintiff submitted satisfactory proof of loss at the summary judgment stage).

To determine whether Defendant acted in bad faith, the Court must also assess whether Defendant's conduct was arbitrary, capricious, or without probable cause. "The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious,' and a 'vexatious refusal to pay' means 'unjustified, without reasonable or probable cause or excuse.'"[72] Penalties should be imposed only when the facts "negate probable cause for nonpayment."[73] "Whether an insured's conduct is arbitrary or capricious depends on the facts known to the insurer at the time of its action" and "is essentially a factual issue."[74] Courts should not assess penalties "when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense."[75] "Where there is a substantial, reasonable and legitimate dispute as to the extent or amount of the loss, the insurer can avoid the imposition of penalties only by unconditionally tendering the undisputed portion of the claim."[76] "The determination of whether [an insurer] acted in an arbitrary and capricious manner or in bad faith in its refusal to fairly and quickly settle its insured's claim is a question of fact . . . ."[77]

In *Merwin v. Spears*, the Louisiana Supreme Court reversed summary judgment in favor of the insured, holding that there were "genuine issues of material facts as to whether [Defendant's] initial decision to deny the claim, based on its investigation and consultation with plaintiffs' expert, was reasonable under the totality of the facts."[78] The court determined that summary judgment is "rarely appropriate for a determination

---

[72] *La. Bag Co.*, 999 So. 2d at 1114.
[73] *Id.* (quoting *Guillory v. Travelers Ins. Co.*, 294 So.2d 215, 217 (La. 1974)).
[74] *Manas Hotel LLC v. AmGUARD Ins. Co.*, No. 1:22-CV-1823, 2025 WL 757166, at *2 (W.D. La. Mar. 10, 2025) (citing *First United Pentecostal Church v. Church Mut. Ins. Co.*, 119 F.4th 417, 427 (5th Cir. 2024)).
[75] *Reed v. State Farm Auto. Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003).
[76] *La. Bag Co.*, 999 So. 2d at 1114-15 (citing *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1092 (La. 1985)).
[77] *Urrate v. Argonaut Great Cent. Ins. Co.*, 881 So.2d 787, 791 (La. Ct. App. 5th Cir. 2004), *writs denied*, 891 So.2d 686, 891 So.2d 690 (La. 2005).
[78] *Merwin v. Spears*, 90 So. 3d 1041, 1042 (La. 2012).

based on subjective facts such as intent, motive, malice, knowledge or good faith."[79] Such "fact-intensive inquir[ies are] not ripe for resolution on summary judgment."[80]

The Court finds there are genuine disputes of material fact as to (1) when Defendant received satisfactory proof of loss from the hurricane, and (2) whether Defendant's payment and handling of the claim under the Policy was arbitrary or capricious. There are outstanding questions about the extent of the loss to the church properties.[81] As to the proof of loss issue, while Plaintiff represents it gave Defendant "notice of the loss on September 1, 2021,"[82] Defendant conducted multiple inspections throughout September and October 2021,[83] and the parties dispute when Defendant received a final report of the damages estimate before tendering its first payment.[84] Defendant points to evidence in the record that Defendant's first adjuster, Ms. Tombs, met with Plaintiff's representatives over the three 2021 inspections, who "agreed to the scope of repairs prepared by Ms. Tomb."[85] The record reflects that, after Defendant's first payment, Plaintiff contested the scope of damages and requested additional inspections, resulting in Defendant's second tender. Defendant still disputed the scope of Plaintiff's reported loss.[86] This factual determination is best left for a jury to decide. Furthermore, given the record evidence of the Church's preexisting plans to renovate and repair buildings on the property prior to Hurricane Ida,[87] there is a dispute of fact as to whether

---

[79] *Id.*

[80] *Sacks v. Allstate Prop. & Cas. Ins. Co.*, No. CV 16-16578, 2017 WL 4791179, at *4 (E.D. La. Oct. 24, 2017) (citing *Thibodeaux v. Arvie*, No. 2017-625, 2017 WL 3775712, at *5 (La. Ct. App. 3d Cir. Aug. 31, 2017)).

[81] *First United Pentecostal Church v. Church Mut. Ins. Co.*, 119 F.4th 417, 428 (5th Cir. 2024). The parties experts disagree as to the scope of loss. *See, e.g.*, R. Doc. 64-12; R. Doc. 64-17.

[82] R. Doc. 64-2, ¶ 2.

[83] R. Doc. 64-5, p. 1.

[84] R. Doc. 66-2, ¶ 8 (citing R. Doc. 66-8); R. Doc. 66-7, p. 30.

[85] R. Doc. 88, p. 2; R. Doc. 66-8, p. 2 ("This estimate represents an agreed scope of repairs with the insured.").

[86] *See* R. Doc. 66-7, p. 2.

[87] R. Doc. 66-1, p. 8 (citing R. Doc. 66-10, August 16, 2021 Board Meeting Minutes).

Defendant had "reasonable and legitimate question[s] as to the extent and causation of [the] claim."[88]

The summary judgment motions will be denied.

Accordingly;

**CONCLUSION**

**IT IS ORDERED** that the Motions for Summary Judgment are **DENIED**.[89]

**New Orleans, Louisiana, this 2nd day of June, 2025.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[88] *First United Pentecostal Church v. Church Mut. Ins. Co.*, 119 F.4th 417, 428 (5th Cir. 2024) (citing *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1114 (La. 2008)). There is also a dispute of fact as to whether Defendant's expert Cusimano made *intentional* misrepresentations in efforts to limit the scope of coverage and whether these actions can be imputed to Defendant's bad faith.
[89] R. Doc. 64; R. Doc. 66.