**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RAYNE MEMORIAL UNITED METHODIST CHURCH,**  Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-4129** |
| **CHURCH MUTUAL INSURANCE COMPANY, S.I.,**  Defendant | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is a motion for judgment as a matter of law or, in the alternative, for a new trial filed by Defendant, Church Mutual Insurance Company, S.I. ("Defendant").[1] Plaintiff, Rayne Memorial United Methodist Church ("Plaintiff") filed a response.[2] Defendant filed a reply.[3]

## BACKGROUND

This matter arises out of a Hurricane Ida insurance coverage dispute. Plaintiff alleged that Defendant issued an insurance policy to cover Plaintiff's property on St. Charles Avenue in New Orleans, Louisiana, and that on August 29, 2021, Hurricane Ida struck Southeast Louisiana, damaging several buildings in Plaintiff's church complex.[4] These allegations were not disputed at trial.

Plaintiff sued Defendant on August 24, 2023 for breach of contract, as well as for statutory penalties and attorneys' fees pursuant to La. R.S. 22:1892 and La. R.S. 22:1973.[5] A four-day trial was held from February 2 to February 5, 2026.[6] At the conclusion of

---

[1] R. Doc. 181.
[2] R. Doc. 187.
[3] R. Doc. 188.
[4] R. Doc. 1 at ¶¶ 6-9.
[5] R. Doc. 1.
[6] R. Docs. 160, 162, 165, 166.

Plaintiff's case, Defendant moved for judgment as a matter of law under Fed R. Civ. P. 50(a), arguing it was entitled to a directed verdict because no reasonable juror would have a legally sufficient basis to find that: (1) Plaintiff had spent enough money to meet its deductible; (2) Defendant received satisfactory proof of loss and, if it did receive it, when; (3) Defendant engaged in "bad faith or vexatious behavior" or made any misrepresentations; (4) Hurricane Ida caused Plaintiff's damages;[7] and (5) Plaintiff was entitled to consequential damages.[8] The Court denied Defendant's motion, finding there was legally sufficient evidence from which a reasonable person could find in favor of Plaintiff on these issues.[9]

At the end of trial, the jury found that Defendant had breached its insurance contract with Plaintiff and violated La. R.S. 22:1892 and La. R.S. 22:1973.[10] The jury found that Defendant arbitrarily, capriciously, and without probable cause had failed to make its payments in the amounts of $110,652.21 and $321,669.17 within thirty days of receiving satisfactory proof of loss, violating La. R.S. 22:1892.[11] The jury found Defendant, arbitrarily, capriciously, and without probable cause, never paid Plaintiff an additional $2,818,230.66 for damages covered under the insurance policy after receiving satisfactory proof of loss, violating La. R.S. 22:1892 and La. R.S. 22:1973.[12] The jury also found Plaintiff suffered $123,935 in consequential damages due to Defendant's failure to pay Plaintiff the full amount it owed under the policy and Defendant's misrepresentation of insurance policy provisions.[13]

---

[7] Defendant's exact argument was that Plaintiff's "own causation expert testified that he saw some preexisting water damage signs, but said he could not confirm their cause[,]" which the Court interprets broadly as an argument regarding causation. R. Doc. 187-1 at p. 3.
[8] R. Doc. 187-1 at pp. 3-5.
[9] *Id.* at p. 11.
[10] R. Doc. 169.
[11] R. Doc. 169 at Question Nos. 1, 2.
[12] *Id.* at Question Nos. 4-7.
[13] *Id.* at Question Nos. 9-10, 14-15.

Following the return of the jury's verdict, the Court assessed the mandatory penalty against Defendant under La. R.S. 22:1892 of 50% of all damages Defendant owed Plaintiff under the contract that Defendant failed to pay within 30 days of receiving satisfactory proof of loss; this penalty amounted to $1,625,276.02.[14] Because significant penalties were awarded against the Defendant as a result of the jury's findings that Defendant failed to timely pay amounts owed under the insurance policy, the Court exercised its discretion to reduce the penalties awarded as a result of Defendant's misrepresentations in violation of La. R.S. 22:1973 to zero dollars ($0.00).[15] The Court entered a final judgment against Defendant in the amount $4,567,441.68— this total includes the additional amount Defendant failed to pay Plaintiff ($2,818,230.66), consequential damages ($123,935), and penalties under La. R.S. 22:1892 ($1,625,276.02).[16]

On March 27, 2026, Defendant filed the present Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial. Defendant raises several arguments it believes warrant granting its motion for judgment as a matter of law. Defendant argues Plaintiff failed to offer sufficient evidence to support the jury's findings: that Hurricane Ida caused the damage to Plaintiff's building complex;[17] that pre-existing defects and Plaintiff's failure to mitigate damages did not cause the interior water damage in Plaintiff's buildings;[18] that Defendant violated La. R.S. 22:1892, as Plaintiff failed to show that Defendant acted arbitrarily and capriciously in failing to pay Plaintiff the full amount of damages Plaintiff sought;[19] and that Defendant violated La. R.S. 22:1973, as Plaintiff

---

[14] R. Doc. 175.
[15] R. Doc. 174.
[16] *Id.*
[17] R. Doc. 181-1 at pp. 10-11.
[18] *Id.* at pp. 9, 10-14.
[19] *Id.* at pp. 15-17.

failed to show Defendant made intentional misrepresentations to Plaintiff.[20] In addition, Defendant argues it actually overpaid Plaintiff for its claim.[21] Defendant argues that Plaintiff provided documentation it spent $778,140.85 for repairs after Hurricane Ida, which is $215,690.85 more than Plaintiff's deductible of $562,450.00.[22] Defendant argues that it owed Plaintiff only the $215,690.85 difference between Plaintiff's deductible and the amount Plaintiff spent on repairs, makings its $472,271.39 tender to Plaintiff an overpayment.[23]

In the alternative, Defendant argues a new trial is warranted. Defendant argues the Court's Jury Instruction No. 36 failed to include relevant language from La. R.S. 22:1892, which resulted in prejudice to the Defendant.[24] Defendant argues the inclusion of Questions 10 and 15 concerning consequential damages in the Jury Verdict Form also caused Defendant prejudice.[25] Finally, Defendant argues it suffered prejudice due to the Court's multiple evidentiary errors.[26]

Plaintiff argues Defendant did not raise any argument in its Rule 50(a) motion concerning proof of causation or Plaintiff's failure to mitigate and, as a result, Defendant has waived these arguments.[27] Plaintiff argues that, even if the Court were to consider these waived arguments, the Court still should deny Defendant's motion.[28] Plaintiff argues it provided ample evidence demonstrating that Hurricane Ida caused its damages and that Defendant acted arbitrarily and capriciously in failing to pay Plaintiff the full

---

[20] *Id.* at p. 18.
[21] *Id.* at pp. 14-15
[22] *Id.* at p. 14.
[23] *Id.* at p. 15.
[24] *Id.* at p. 20.
[25] *Id.* at p. 21.
[26] *Id.* at pp. 23-25.
[27] R. Doc. 187 at pp. 3-4.
[28] *Id.* at pp. 4-7.

amount of damages owed.[29] In addition, Plaintiff argues Defendant bears the burden of proving that Plaintiff failed to mitigate its damages and that the jury correctly found Plaintiff had failed to carry this burden.[30] Plaintiff further argues the insurance policy does not require that Plaintiff have already made repairs to its buildings to qualify for compensation and, as a result, Defendant's liability is not limited to $215,690.85.[31]

Plaintiff argues also that a new trial is unwarranted.[32] Plaintiff argues the Court did not err in instructing the jury or in including questions on consequential damages in the Jury Verdict Form.[33] Finally, Plaintiff argues the Court did not commit any evidentiary errors.[34]

## LAW AND ANALYSIS

### I.  Defendant is not entitled to judgment as a matter of law.

The Court will deny Defendant's Rule 50(b) motion for judgment as a matter of law. Rule 50(b) of the Federal Rules of Civil Procedure provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.[35]

---

[29] *Id.* at pp. 9-11, 13-16.
[30] *Id.* at pp. 11-12.
[31] *Id.* at pp. 12-13.
[32] *Id.* at p. 12.
[33] *Id.* at pp. 12-16.
[34] *Id.* at pp. 17-22.
[35] FED. R. CIV. P. 50(b).

"A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'"[36] The Court does not "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury. Judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis for a claim under the controlling law."[37] "If a party fails to move for JMOL under Rule 50(a) after all the evidence has been presented, then 'that party waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal.'"[38] The Fifth Circuit has held that, when a party does not raise an issue in a Rule 50(a) motion at trial, the party waives the ability to raise that issue in a post-trial Rule 50(b) motion.[39] However, a party may raise an issue for the first time in a Rule 50(b) motion when it has made "a Rule 50(a) motion on a substantially similar issue adequate to give notice of the perceived insufficiency [of evidence]."[40]

As Defendant raised its Rule 50(b) arguments, or substantially similar arguments, in its Rule 50(a) motion, these arguments have not been waived.[41] In its Rule 50(b) motion, Defendant argues Plaintiff failed to offer sufficient evidence to support the jury's finding that Defendant acted arbitrarily and capriciously;[42] that Plaintiff failed to offer sufficient evidence to support the jury's finding that Defendant made intentional misrepresentations to Plaintiff;[43] that Plaintiff failed to offer sufficient evidence to

---

[36] *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 455 (5th Cir. 2001) (citation omitted).
[37] *Id.* (citation and internal ellipsis omitted).
[38] *Alonso v. Westcoast Corp.*, 920 F.3d 878, 884 (5th Cir. 2019)
[39] *Id.*
[40] *Sonder USA, Inc. v. 635 N. Scott St., LLC*, No. CV 18-13891, 2022 WL 1540593, at *10 (E.D. La. May 16, 2022)(citing *Foreman v. Acceptance Indem. Co.*, 730 F. App'x 191, 195 (5th Cir. 2018)).
[41] While Defendant did not expressly raise the issue of mitigation in its Rule 50(a) motion, the Court finds the issue of whether Plaintiff mitigated its damages is substantially similar to the issue of causation, which Defendant raised in its 50(a) motion.
[42] R. Doc. 181-1 at pp. 15-17.
[43] *Id.* at p. 18.

6

support the Jury's finding that Hurricane Ida caused Plaintiff's damages;[44] that Plaintiff failed to offer sufficient evidence to support the jury's finding that Plaintiff did not fail to mitigate its damages;[45] and that Defendant actually overpaid Plaintiff for its claim.[46]

In this case, the Court finds no basis upon which to grant Defendant's motion for judgment as a matter of law. A court should grant a motion for judgment as a matter of law only if there "is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue."[47] Because the "standard of review with respect to a Jury verdict is especially deferential," a Rule 50 motion "should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."[48] The Court finds the evidence and testimony at trial was sufficient to support the Jury's verdict. The Jury performed its task of weighing the evidence and assessing the credibility of witnesses—its findings will not be disturbed by the Court. Accordingly, the Court will deny Defendant's motion for judgment as a matter of law on these issues.

## II.     Defendant is not entitled to a new trial.

In the alternative, Defendant requests this Court grant a new trial.[49] Rule 59(a)(1)(A) provides that a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." The Fifth Circuit has

---

[44] *Id.* In Defendant's 50(a) motion, Defendant argued Plaintiff's "own causation expert testified that he saw some pre-existing water damage signs, but said he could not confirm the cause." R. Doc. 187-1 at p.4. While Defendant appears to argue Plaintiff's expert could not confirm whether Hurricane Ida caused Plaintiff's damage, Plaintiff's expert actually testified that he could not confirm that signs of prior water damage, such as brown stains on ceiling roof tiles, were caused by active leaks at the time of Hurricane Ida.

[45] R. Doc. 181-1 at pp. 13-14.

[46] *Id.* at pp. 14-15. Defendant argues that it owed Plaintiff only the $215,690.85 difference between Plaintiff's deductible and the amount Plaintiff spent on repairs, makings its $472,271.39 tender to Plaintiff an overpayment. R. Doc. 181-1 at p. 15. Defendant raised the same issue in its Rule 50(a) motion, arguing that it did not owe Plaintiff any damages under the policy because Plaintiff had not offered evidence showing it met its deductible. R. Doc. 187-1 at p. 4.

[47] *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001).

[48] *Id.* Defendant did not have an official transcript prepared for its motion.

[49] R. Doc. 181-1 at p. 20.

held that Rule 59(a) allows the district court to grant a new trial if, for example, it 'finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course.'"[50] Importantly, "[a] motion for a new trial or to amend a judgment 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'"[51] "Courts look skeptically at . . . claims for a do-over, especially in the context of a jury verdict."[52] Moreover, "[a] motion for a new trial pursuant to Rule 59 is an extraordinary remedy that should be used sparingly."[53]

> **A.    Defendant did not object to the omission of language regarding partial payment in Jury Instruction No. 36. Even if it had objected, the instruction was correct and non-prejudicial.**

The Court will not grant Defendant's motion for a new trial based on the Jury Instructions. Defendant argues the Court's Jury Instruction No. 36 failed to include relevant language from La. R.S. 22:1892.[54] Jury Instruction No. 36 read as follows:

> The second governing statute is La. R.S. 22:1892. If you find that the insurer failed to pay any "undisputed amount" within 30 days of receipt of "satisfactory proof of loss," and you find that refusal was "arbitrary, capricious, or without probable cause," the insurer is liable for its breach of this statute.

> If you find the insurer is liable as a result of the insurer's failure to pay within the statutory time limit, in addition to the contractual amount owed by the insurer to the insured, the penalty is fifty percent (50%) of the amount you determined the insured contractually owed the insured or one thousand dollars, whichever is greater.[55]

---

[50] *Smith v. Transworld Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

[51] *Garriott v. NCsoft Corp.*, 661 F.3d 243, 248 (5th Cir. 2011).

[52] *Id.*

[53] *Karim v. Finch Shipping Co.*, 111 F. Supp. 2d 783, 784 (E.D. La. 2000).

[54] R. Doc. 181-1 at p. 20. Plaintiff's bad faith claims arise under the versions of La. R.S. 22:1892 and La. R.S. 22:1973 that were effective on August 29, 2021, the date Plaintiff suffered its damages.

[55] R. Doc. 168 at p. 17. Jury Instruction No. 36 incorrectly states that the minimum penalty for violation of La. R.S. 22:1892 is $1,000. However, the actual minimum penalty is $2,500, as Plaintiff's property damage was caused by a declared disaster. The Court notes that the parties never raised the issue of the amount of the minimum penalty during proceedings. In fact, both parties' proposed instructions included $1,000 as the minimum penalty for violation of La. R.S. 22:1892. R. Doc. 187-3 at p. 10; 132 at p. 23. In any event, the difference between the minimum penalty is of no import, as Plaintiff sought and received damages well in excess of the minimum penalty.

8

Defendant argues that, because it made partial payments to Plaintiff for Hurricane Ida-related damage, the Court should have included language from the statute reflecting penalties in the event of a partial payment shown in bold below:[56]

> In the case of a presidentially or gubernatorially declared disaster, failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or two thousand five hundred dollars, whichever is greater, payable to the insured, or **in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs or two thousand five hundred dollars, whichever is greater**.[57]

Defendant argues Jury Instruction No. 36 should have included the language in bold alone and should have instructed the jury to consider the payments Defendant had already made to Plaintiff when calculating damages.[58] Defendant argues the omission of this language was significant and prejudicial.[59] Defendant argues it timely objected to the omission of this language in Instruction No. 36 but fails to provide a citation to the record establishing that it made this objection.[60]

Plaintiff argues that, not only did Defendant not object at trial to Jury Instruction No. 36, Defendant proposed the exact language that appeared in Jury Instruction No. 36 before the trial and never proposed that any language concerning partial tenders be added.[61] Plaintiff further argues Jury Instruction No. 36 contained the correct language

---

[56] R. Doc. 181-1 at p. 20.
[57] La. R.S. 22:1892(B)(1)(b).
[58] R. Doc. 181-1 at p. 21.
[59] *Id.*
[60] *Id.*
[61] R. Doc. 187 at p. 18.

from the statute and, as a result, did not prejudice Defendant.[62] Plaintiff points out that the Jury Verdict Form separated the amounts Defendant untimely paid versus amounts Defendant had never paid.[63] Plaintiff argues it did not receive duplicate penalties under La. R.S. 22:1892 and, as a result, the omission of language concerning partial payment caused Defendant no harm.[64]

The Court will not grant a new trial based on Jury Instruction No. 36, as Defendant failed to preserve any objection to the omission of language concerning partial tenders in Instruction No. 36. "[A] motion for a new trial or to amend a judgment 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'"[65] In the parties' initial joint proposed jury instructions filed on January 23, 2026, the parties proposed an instruction stating:

**Elements of Statutory Bad Faith (La. R.S. § 22:1892): Failure to Pay Timely**

An insurer issuing the type of policy at issue here must pay a claim within thirty days after it receives "satisfactory proof of loss."

The first Louisiana "bad faith" statute provides that if the insurer fails to pay the claim within that period and its failure is arbitrary, capricious or without probable cause, it is subjected to a penalty (in addition to the amount of the loss itself) of 50% of the amount found to be due from the insurer to the insured or $1,000, whichever is greater, plus reasonable attorney's fees and costs to be set by the Court.

You must determine whether Church Mutual received satisfactory proof of loss, whether Church Mutual failed to pay within the thirty-day period after receipt of satisfactory proof of loss, and whether the insurer's failure was arbitrary, capricious or without probable cause. [66]

---

[62] *Id.* at p. 19.
[63] *Id.*
[64] *Id.*
[65] *Garriott v. NCsoft Corp.*, 661 F.3d 243, 248 (5th Cir. 2011).
[66] R. Doc. 136 at p. 25.

Defendant provided an additional version of proposed jury instructions on January 28, 2026; in the second version, Defendant proposed different language for some instructions but proposed the exact same language included in Instruction No. 36 for the instruction on bad faith penalties under La. R.S. § 22:1892.[67] Throughout the process of revising the jury instructions, Defendant never objected to the omission of language concerning partial tenders, even when the parties made objections to the Court's proposed jury instructions on the record on January 30, 2026.[68] Furthermore, before immediately instructing the jury on the law, the Court allowed both parties to note on the record any objections they had to the Court's final jury instructions.[69] Defendant objected to Instruction No. 36, but only on grounds that the instruction did not specify that satisfactory proof of loss must come in written form.[70] Defendant also requested the Court "remove the last sentence" of Jury Instruction No. 26, which stated that an insurance company bears the burden of demonstrating that particular damage is excluded from coverage.[71] These were the only two objections Defendant raised on the record, and neither related to the inclusion of partial payment language. Because Defendant failed to raise any objection to the omission of language concerning partial tenders before the Court instructed the jury, the Court will not grant Defendant a new trial based on Jury Instruction No. 36.[72]

---

[67] R. Doc. 187-3 at p. 10 (Defendant's January 28, 2026 email to the Court containing proposed jury instructions).

[68] *See* R. Doc. 155 (Defendant articulating no objection to proposed jury instruction no. 17: "The penalty is fifty percent (50%) of the amount you determined the insurer contractually owed the insured."); *see also* Rec. Docs. 163-164 (briefing by Plaintiff and Defendant addressing Defendant's objection to the Court's proposed jury instructions).

[69] Jury Charge Objections Transcript, p. 3.

[70] *Id.* at pp. 10-11.

[71] *Id.* at p. 6.

[72] *See Garriott*, 661 F.3d at 248.

In addition, the Court will not grant a new trial based on the language in Instruction No. 36 as the instruction was correct and its inclusion did not prejudice Defendant. Even though Defendant did not object to the omission of language concerning partial tenders, "a trial court has a duty to instruct the jurors, fully and correctly, on the applicable law of the case."[73] The Fifth Circuit has stated that it will grant a new trial based on a jury instruction only when "the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."[74] Moreover, courts may grant a new trial if the court finds "the trial was unfair, or *prejudicial* error was committed in its course."[75]

While Defendant suggests that the lack of language concerning partial payment resulted in "stacking penalties,"[76] this did not occur. The Fifth Circuit has made clear that the partial payment language in La. R.S. 22:1892 "applies if (and only if) the insured's partial payment complies with the statutory requirements—namely, it is tendered "within thirty days after receipt of satisfactory proofs of loss from the insured."[77] As a result, because Defendant's payments were not made within 30 days, the language concerning partial payment was not applicable in this case and would have had no impact on the Jury's verdict. The Jury Verdict Form correctly separated the amounts Defendant had already paid, albeit not timely, from the amounts Defendant never paid.[78] Question No. 1 in the verdict form asked the jury

> Do you find by a preponderance of the evidence that any of the payments that Church Mutual Insurance Company ("Church Mutual") made to Rayne Memorial

---

[73] *Horton v. Buhrke, a Div. of Klein Tools, Inc.*, 926 F.2d 456, 460 (5th Cir. 1991).
[74] *Id.*
[75] *Smith v. Transworld Co.*, 773 F.2d 610, 613 (5th Cir. 1985)(emphasis added).
[76] R. Doc. 181-1 at p. 20.
[77] *French v. Allstate Indem. Co.*, 637 F.3d 571, 588 (5th Cir. 2011)(interpreting La. R.S. 22:658, which was later renumbered as La. R.S. 22:1892.)
[78] R. Doc. 169.

> United Methodist Church ("Rayne")  in 2021 and 2022 were made more than 30 days after Church Mutual received satisfactory proofs of loss for such amounts?[79]

Separately, question No. 4 in the verdict form asked the jury

> What additional amount do you find by a preponderance of the evidence Church Mutual owes Rayne for property damage resulting from Hurricane Ida?[80]

The jury determined that, although Defendant tendered two payments of $110,652.21 and $321,669.17 to Plaintiff for Hurricane Ida-related damage, it failed to make these payments within 30 days after satisfactory proof of loss.[81] In addition, the jury found Defendant never paid Plaintiff $2,818,230.66 it owed under the policy, even after receiving satisfactory proof of loss.[82] Accordingly, the Jury found Defendant did not pay *any* amount of money it owed Plaintiff within 30 days of receiving satisfactory proof of loss. La. R.S. 22:1892 requires the Court to assess a mandatory penalty on *all* amounts the insurer failed to pay within 30 days, regardless of whether the insured eventually makes the payment,[83] which this Court did.[84] To allow otherwise would "read out the statute's time-limit requirement" and "permit insurers who had untimely paid 100 percent of a[n] insured's claim to avoid statutory penalties."[85] The language of Jury Instruction No. 36 properly guided the jury in their deliberations and did not prejudice Defendant, and the Court will not grant Defendant a new trial on these grounds.

---

[79] *Id.* at Question No. 1.
[80] *Id.* at Question No. 4.
[81] R. Doc. 169, Question No. 2.
[82] Id. at Question Nos. 4-5.
[83] *French*, 637 F.3d at 588.
[84] R. Doc. 175.
[85] *French*, 637 F.3d at 588.

**B.    Defendant did not object to the inclusion of questions on consequential damages in the Jury Verdict Form. Even if it had objected, the Court did not err in including these questions.**

Defendant argues this Court should grant a new trial because the Court included questions concerning consequential damages in the Jury Verdict Form.[86] Question No. 10 on the Jury Verdict Form asked the jury:

> What amount of damages did Rayne sustain, beyond what it was owed under the insurance policy, as a result of Church Mutual's failure to pay Rayne the amount you identified in Question No. 4. [additional amount owed] within 60 days?[87]

Question No. 15 on the Jury Verdict form asked the jury:

> What amount of damages did Rayne sustain, beyond what it was owed under the insurance policy, as a result of Church Mutual's breach of its duty of good faith and fair dealing by misrepresenting pertinent facts or insurance policy provisions?[88]

Defendant argues the Court should not have included these questions in the Jury Verdict Form because the contract between the parties did not allow recovery for consequential damages.[89] Defendant argues the insurance policy states that Defendant will pay the replacement cost or actual cash value of the property "as of the time of loss or damage[.]"[90] Defendant argues the policy further provides that Defendant "will not pay on a Replacement Cost basis for any loss or damage: (a) Until the lost or damaged property is actually repaired or replaced; and (b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage."[91] Defendant argues this language prohibits Plaintiff from recovering any consequential damages under the contract, such as damages for the increase in the price of materials from 2021 to 2026.[92] Defendant

---

[86] R. Doc. 181-1 at p. 21.
[87] R. Doc. 169, Question No. 10.
[88] *Id.,* Question No. 15.
[89] R. Doc 181-1 at p. 21.
[90] *Id.* at p. 22.
[91] *Id.*
[92] *Id.*

argues including a question on an item of damages that the insurance policy does not provide taints the verdict and warrants granting a new trial.[93]

Plaintiff argues Defendant never objected to any jury instruction, any portion of the jury verdict form, or the proposed judgment on the basis that they referenced consequential damages and, as a result, Defendant has failed to preserve this objection.[94] Plaintiff argues that, even if Defendant had objected to questions on consequential damages, La. R.S. 22:1973 expressly allows an insured to recover all damages that result from an insurer's bad faith.[95] Plaintiff argues Defendant's failure to timely pay Plaintiff the full amount owed under the policy resulted in consequential damages due to the price increases for labor and materials since 2021.[96] Plaintiff argues the jury properly found that Defendant's failure to timely pay the full amount owed under the policy caused Plaintiff $123,935 in consequential damages.[97]

The Court will not grant a new trial based on the inclusion of questions in the Jury Verdict Form concerning consequential damages as Defendant did not preserve this objection. "[A] motion for a new trial or to amend a judgment 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'"[98] Throughout the process of creating the Jury Verdict Form, Defendant did not argue the Court should exclude any questions referencing consequential damages. It is true Defendant provided a proposed jury verdict form to the Court on January 16, 2026, which did not include a question asking what amount of consequential damages Defendant owed Plaintiff.[99] On January 26, 2026, the Court emailed the parties a proposed verdict

---

[93] *Id.* at p. 23.
[94] R. Doc. 187 at p. 20.
[95] *Id.* at p. 21.
[96] *Id.*
[97] *Id.*
[98] *Garriott v. NCsoft Corp.*, 661 F.3d 243, 248 (5th Cir. 2011).
[99] R. Doc. 122-5.

form which did include questions on consequential damages under La. R.S. 22:1973. Even if the Court considered Defendant's omission of any question referencing consequential damages in its January 16, 2026 version of the jury verdict form as an objection to the inclusion of such questions, at the January 28, 2026 status conference the Court invited the parties to submit a new proposed jury verdict form.[100] Both Plaintiff and Defendant submitted new versions of the jury verdict form;[101] Defendant was free to propose whatever form it saw fit. Defendant's verdict form included the same questions on consequential damages under La. R.S. 22:1973 that the Court included in its proposed form, and Defendant did not note any objection to these questions.[102]

Furthermore, before providing the final verdict form to the Jury, the Court allowed both parties to note on the record any objections they had to the verdict form—Defendant made no objections to the jury verdict form at that time.[103] Because Defendant failed to expressly raise the issue of consequential damages before the Court provided the verdict form to the jury, the Court will not grant Defendant a new trial based on the inclusion of questions in the Jury Verdict Form concerning consequential damages.[104]

In addition, the Court will not grant a new trial because the Court did not err in including questions on consequential damages in the Jury Verdict Form. La. R.S. 22:1973(A) provides that:

> Any insurer who breaches its duty of good faith and fair dealing "shall be liable for *any* damages sustained as a result of the breach.[105]

La. R.S. 22:1973(B) states that an insurer can breach its duty of good faith by

---

[100] R. Doc. 142.
[101] R. Doc. 149 (Plaintiff's Proposed Verdict Form); R. Doc. 156 (Defendant's Proposed Verdict Form).
[102] *See* R. Doc. 156, Question Nos. 10, 15.
[103] Jury Charge Objections Transcript, p. 3.
[104] *Garriott*, 661 F.3d at 248.
[105] La. R.S. 22:1973(A)(emphasis added).

(1) Misrepresenting pertinent facts or insurance policy provisions related to coverage;[106]

or by

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.[107]

Reading these provisions together, La. R.S. 22:1973 allows for an insured to receive (1) consequential damages that result from an insurer's arbitrary and capricious failure to pay a claim within sixty days of receipt of satisfactory proof of loss and/or (2) consequential damages that result from an insurer's misrepresentation of facts or provisions related to coverage. Accordingly, the Louisiana Supreme Court has recognized that La. R.S. 22:1973 allows for recovery of consequential damages.[108] Question Nos. 10 and 15 are consistent with these provisions of La. R.S. 22:1973. Question No. 10 asked the jury what damages outside of the contract Plaintiff suffered as a result of Defendant's failure to pay the amount it owed under the policy within 60 days. Question No. 15 asked the jury what damages outside of the contract Plaintiff suffered as a result of Defendant's misrepresentations. Both questions are proper under La. R.S. 22:1973 which allows an insured to recover *any* damages that result from an insurer's breach of its duty of good faith.[109] The fact that Defendant disagrees with the jury's answer to these questions does not render the questions inappropriate.[110] Accordingly, the Court did not err in including

---

[106] La. R.S. 22:1973(B)(1), (5).

[107] La. R.S. 22:1973(B)(5).

[108] *See Durio v. Horace Mann Ins. Co.*, 2011-0084 (La. 10/25/11), 74 So. 3d 1159, 1169 (recognizing that La. R.S. 22:1220, which was later renumbered as La. R.S. 22:1973, allowed for recovery of consequential damages).

[109] La. R.S. 22:1973(A).

[110] Defendant cites *First Baptist Church of Iowa, La. v. Church Mut. Ins. Co.*, S.I., seemingly for the proposition that this Court should review the jury's award of consequential damages as a question of law and afford it no deference. R. Doc. 181-1 at p. 23 (citing 105 F.4th 775, 786–88 (5th Cir. 2024). However, the Fifth Circuit in that case overturned a judgment in a *bench* trial, not a jury trial. Moreover, in *First Baptist*, the Fifth Circuit reviewed the trial court's interpretation of an insurance policy *de novo*; it did not, review a jury's award of consequential damages *de novo*.

questions on consequential damages under La. R.S. 22:1973 in the Jury Verdict Form and the Court will not grant a new trial on this ground.

### C.   The Court did not err in allowing Marcel Fournet to testify as an expert.

Defendant argues this Court should grant a new trial because the Court improperly allowed Plaintiff's expert Marcel Fournet to testify without providing an expert report that complied with the requirements of Fed R. Civ. P. Rule 26(a)(2)(B). Rule 26 requires that witnesses retained to provide expert testimony must provide a report containing, among other requirements, a complete statement of all opinions the witness will express and the basis and reasons for them.[111] To determine admissibility of expert testimony, a trial court should "approach its task 'with proper deference to the jury's role as the arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"[112] "The 'basic purpose' of Rule 26 is 'preventing prejudice and surprise.'"[113] Importantly, the Fifth Circuit reviews a trial court's decision to admit or exclude expert testimony for abuse of discretion.[114]

Defendant argues that, even though Fournet testified that Hurricane Ida caused Plaintiff's damages, Fournet's expert report did not contain a written scope of work or a written causation analysis.[115] Defendant argues the Court acknowledged this deficiency in Fournet's expert report yet allowed Fournet to testify as to causation.[116]

---

[111] Fed R. Civ. P. Rule 26(a)(2)(B).

[112] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[113] *Seilham v. Commonwealth Land Title Ins. Co.*, 360 F. Supp. 3d 412, 421 (E.D. La. 2018) (quoting *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994)).

[114] *First United Pentecostal Church v. Church Mut. Ins. Co.*, 119 F.4th 417, 424 (5th Cir. 2024).

[115] R. Doc. 181-1 at p 23.

[116] *Id.* at p. 24.

Plaintiff argues Fournet issued two expert reports that sufficiently described the opinions he expressed at trial.[117] Plaintiff argues Fournet's reports explained that it was his opinion that Hurricane Ida's winds and rain caused damage to Plaintiff's building complex and that Louis Relle's estimate to repair Plaintiff's Ida-related damage was "an appropriate scope of repair for damages caused by high winds during Hurricane Ida to the varying conditions throughout the [Plaintiff's] facility."[118]

The Court properly allowed Fournet to testify. During trial, Defendant objected to Fournet testifying and presented these same arguments on whether Fournet's expert report contained his opinion that Hurricane Ida caused Plaintiff's damages. The Court ruled that, because Fournet stated in his report that Louis Relle's estimate was "an appropriate scope of repair for damages caused by high winds during Hurricane Ida," Fournet had stated his opinion that Hurricane Ida had caused the damages Plaintiff claimed.[119] Fournet also stated in his report that storm winds blew off, damaged, and lifted multiple roofing tiles, which "present[ed] openings for storm water and subsequent rain water to enter."[120] Moreover, Defendant deposed Fournet before trial. At Fournet's deposition, Fournet stated that the Relle estimate "assign[ed] no work other than what we perceive to be Ida damage."[121] This statement put Defendant on notice that Fournet, relying on Relle's estimate, would testify as to the scope of damage that Hurricane Ida caused. As a result, Defendant suffered no prejudice or surprise from Fournet's trial testimony.[122] Defendant has not presented any argument that sways this Court from its initial finding that Fournet should be allowed to testify to causation. The decision to admit

---

[117] R. Doc. 187 at p. 22.
[118] R. Doc. 77-12 at p. 3. Plaintiff attached Fournet's expert reports to its response to Defendant's Motion in Limine to exclude his testimony. R. Docs. 77-11, 77-12.
[119] *Id.*
[120] R. Doc. 77-11 at pp. 1-2.
[121] R. Doc. 187-4 at 72:19-22.
[122] *See Seilham*, 360 F. Supp. 3d at 421.

Fournet's testimony was within the Court's discretion, and the Court did not err in allowing Fournet to provide expert testimony.[123] Accordingly, the Court will not grant a new trial on this ground.

> **D.    The Court did not err in allowing Plaintiff to introduce videos of Hurricane Ida into evidence.**

Defendant argues this Court erred in allowing Plaintiff to introduce Exhibits 235-238, which are videos showing the Rayne complex and grounds during Hurricane Ida.[124] Defendant argues Plaintiff did not call the Church sexton, who recorded the videos, as a witness to authenticate this evidence.[125] Defendant argues Pastor Jay Hogewood's testimony was not sufficient to authenticate the videos because he could not testify as to what exact time the Sexton took the videos.[126] Plaintiff argues that, because Pastor Hogewood testified that he received the videos from the sexton via text message during Hurricane Ida and was able to verify what they depicted, the Court correctly found that Pastor Hogewood's testimony authenticated the video exhibits.[127]

Fed. R. Evid. 901(b) provides that evidence may be authenticated through testimony from a witness with knowledge "that an item is what it is claimed to be."[128] Video evidence may be authenticated through "foundation evidence sufficient to show the circumstances under which the film was activated and made, the chain of custody of the film, and the reliability of the process."[129] Pastor Hogewood testified that he received the video exhibits during Hurricane Ida from the Church sexton. In addition, Pastor Hogewood, who is intimately familiar with the Rayne complex, described and identified

---

[123] *See First United Pentecostal Church.*, 119 F.4th at 424.
[124] R. Doc. 181-1 at p. 24.
[125] *Id.*
[126] *Id.*
[127] R. Doc. 187 at p. 27.
[128] Fed. R. Evid. 901(b)(1).
[129] *USA v. Sterling*, 550 F.Supp.3d 358, 361 (M.D. La. July 23, 2021)(quoting *United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir. 1981).

the areas of the Rayne complex each video depicted. Pastor Hogewood knew that he received the videos sometime during Hurricane Ida—the fact that Pastor Hogewood could not testify to the exact hour and minute he received these videos does not render him unable to authenticate them. Accordingly, the Court did not err in allowing Plaintiff to introduce videos of the Rayne complex recorded during Hurricane Ida.

Even if the Court erred in allowing Plaintiff to introduce videos showing Plaintiff's property during Hurricane Ida, such error does not warrant granting a new trial. The Fifth Circuit has held that a court may grant a new trial if "the trial was unfair, or prejudicial error was committed in its course.'"[130] "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial."[131]

Defendant has failed to carry its burden of proving the admission of these videos constituted harmful error or that Defendant suffered prejudice. The videos depicted Plaintiff's complex during the hurricane; the videos did not include commentary or opinion on whether the storm actually caused Plaintiff's property damage. As a result, the Court will not grant a new trial based on this argument.

**E.    The Court did not err in excluding Defendant's unauthenticated videos.**

Defendant argues this Court erred in not allowing Defendant to introduce Exhibit 212, which consists of two videos depicting the gravel roof of the Westerfield building in the Rayne complex.[132] Defendant argues these videos, taken by an unidentified employee

---

[130] *Smith v. Transworld Co.*, 773 F.2d 610, 613 (5th Cir. 1985).
[131] *United States v. Healthcare Assocs. of Texas, LLC,* No. 3:19-CV-02486-N, 2025 WL 1885642, at *1 (N.D. Tex. July 8, 2025)(citing Sibley v. Lemaire, 184 F.3d 481, 487 (5th Cir. 1999).
[132] R. Doc. 181-1 at p. 24.

from Above All Construction, would have impeached Plaintiff's witnesses who testified there were no active roof leaks prior to Hurricane Ida.[133]

Plaintiff argues Defendant provided no witness who could authenticate the videos of the gravel roof.[134] Plaintiff argues that, not only was the person who took the videos not at trial, but no trial witness had ever seen these videos and Defendant could not offer any testimony concerning when the videos were taken, where they were taken, by whom, or what they showed.[135] As a result, Plaintiff argues this Court correctly excluded these videos.[136]

The Court did not err in excluding these videos. Defendant did not offer any testimony showing "the circumstances under which the film was activated and made, the chain and custody of the film, and the reliability of the process."[137] The Above All Construction employee who took the videos did not testify at trial; in fact, no witness testified as to what the videos depicted. Accordingly, Defendant failed to offer foundation evidence that authenticated these videos, and the Court will not grant a new trial on this ground.

Even if the Court erred in preventing Defendant from introducing these videos into evidence, the Court would still not grant a new trial. Again, Defendant has failed to carry its burden of proving the exclusion of these videos constituted harmful error or that Defendant suffered prejudice. Defendant had the ability to cross-examine Plaintiffs' witnesses on whether Plaintiff's buildings had active roof leaks prior to Hurricane Ida. In addition, Defendant had ample opportunity to introduce authenticated evidence in an

---

[133] *Id.*
[134] R. Doc. 187 at p. 27.
[135] *Id.*
[136] *Id.*
[137] *USA v. Sterling*, F.Supp.3d 358, 365-61 (E.D. La. July 7, 2023)(quoting *United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir. 1981).

attempt to show the buildings had active roof leaks at the time of the hurricane. As a result, even if the Court should have allowed Defendant to introduce these videos into evidence, the Court would not grant a new trial based on this argument.

## CONCLUSION

**IT IS ORDERED** that Defendant's Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial is **DENIED.**[138]

**New Orleans, Louisiana, this 8th day of May, 2026.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[138] R. Doc. 181.