UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYNE MEMORIAL UNITED METHODIST CHURCH,**<br>  **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  23-4129** |
| **CHURCH MUTUAL INSURANCE COMPANY, S.I.,**<br>  **Defendant** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is an objection[1] filed by Defendant Church Mutual Insurance Company, S.I. ("Defendant") to a Report and Recommendation[2] issued by the assigned Magistrate Judge on a motion for attorneys' fees and costs.[3] Plaintiff Rayne Memorial United Methodist Church ("Plaintiff") filed a response to Defendant's objection.[4]

## BACKGROUND

This matter arises from a Hurricane Ida insurance coverage dispute. Plaintiff sued Defendant on August 24, 2023 for breach of contract, as well as for statutory penalties and attorneys' fees pursuant to La. R.S. 22:1892 and La. R.S. 22:1973.[5] Plaintiff alleged that Defendant issued an insurance policy to cover Plaintiff's property on St. Charles Avenue in New Orleans, Louisiana, and that on August 29, 2021, Hurricane Ida struck Southeast Louisiana, damaging several buildings in Plaintiff's church complex.[6] A four-day trial was held from February 2 to February 5, 2026.[7]

---

[1] R. Doc. 209.
[2] R. Doc. 203.
[3] R. Doc. 176.
[4] R. Doc. 212.
[5] R. Doc. 1.
[6] R. Doc. 1 at ¶ ¶ 6-9.
[7] R. Docs. 160, 162, 165, 166.

The trial, and requisite attorney involvement, was extensive and complex. At the conclusion of Plaintiff's case, Defendant moved for judgment as a matter of law under Fed. R. Civ. P. 50(a), arguing it was entitled to a directed verdict.[8] The Court denied Defendant's motion, finding there was legally sufficient evidence from which a reasonable person could find in favor of Plaintiff.[9] At the end of trial, the jury found that Defendant had breached its insurance contract with Plaintiff and violated La. R.S. 22:1892 and La. R.S. 22:1973.[10] The jury found that Defendant arbitrarily, capriciously, and without probable cause had failed to make payments in the amounts of $110,652.21 and $321,669.17 within thirty days of receiving satisfactory proof of loss, violating La. R.S. 22:1892.[11] The jury found Defendant, arbitrarily, capriciously, and without probable cause, never paid Plaintiff an additional $2,818,230.66 for damages covered under the insurance policy after receiving satisfactory proof of loss, violating La. R.S. 22:1892 and La. R.S. 22:1973.[12] The jury further found Defendant violated La. R.S. 22:1973 by misrepresenting insurance policy provisions and that Plaintiff suffered $123,935 in consequential damages due to Defendant's violations of La R.S. 22:1973.[13]

Following the return of the jury's verdict, the Court assessed the mandatory penalty against Defendant under La. R.S. 22:1892 in the amount of 50% of all damages Defendant owed Plaintiff but failed to pay within 30 days of receiving satisfactory proof of loss; this penalty amounted to $1,625,276.02.[14] Because significant penalties were awarded against the Defendant under La. R.S. 22:1892 as a result of the jury's findings that Defendant failed to timely pay amounts owed under the insurance policy within 30

---

[8] R. Doc. 187-1 at pp. 3-5.
[9] *Id.* at p. 11.
[10] R. Doc. 169.
[11] R. Doc. 169 at Question Nos. 1, 2.
[12] *Id.* at Question Nos. 4-7.
[13] *Id.* at Question Nos. 9-10, 14-15.
[14] R. Doc. 175.

days, the Court exercised its discretion to reduce the penalties awarded as a result of Defendant's misrepresentations in violation of La. R.S. 22:1973 to zero dollars ($0.00).[15] The Court entered a final judgment against Defendant in the amount of $4,567,441.68—this total includes the additional amount Defendant never paid Plaintiff ($2,818,230.66), consequential damages under La. R.S. 22:1973 ($123,935), and penalties under La. R.S. 22:1892 ($1,625,276.02).[16]

Defendant filed a renewed Motion for Judgment as a Matter of Law, or, in the Alternative, for a New Trial on March 27, 2026.[17] Defendant raised several arguments it believed warranted granting its motion, including Plaintiff's failure to offer sufficient evidence to support the jury's findings;[18] the Court erroneously allowing incompetent evidence;[19] and the Court's improper jury instructions resulting in prejudice to the Defendant.[20] On May 8, 2026, this Court issued an Order and Reasons denying Defendant's motion.[21]

Plaintiff filed the instant Motion to Fix Attorneys' Fees and Costs on March 9, 2026.[22] In its motion, Plaintiff argues the Court should award $563,002.10 in attorneys' fees.[23] Plaintiff argues its counsel charged reasonable rates given their experience, qualifications, and the complex nature of this issue. Plaintiff further argues its counsel billed Plaintiff for a reasonable number of hours considering that counsel worked well in excess of the number of hours for which they charged.[24] Plaintiff also seeks to recover

---

[15] R. Doc. 174.
[16] R. Doc. 175.
[17] R. Doc. 181-1.
[18] *Id*. at pp. 9-19.
[19] *Id*. at pp. 23-24.
[20] *Id*. at 20.
[21] R. Doc. 189.
[22] R. Doc. 176.
[23] In its initial motion, Plaintiff requests $526,750.85 in attorneys' fees. R. Doc. 176-1 at p. 1. However, on May 14, 2026, Plaintiff filed a supplemental memorandum requesting $563,002.10 in attorneys' fees, which encompasses fees incurred after it submitted its initial motion. R. Doc. 192 at p. 4.
[24] R. Doc. 176-1 at pp. 3-4.

$341,489.41 in costs, arguing that La. R.S. 22:1892 provides for recovery of all litigation-related costs, including costs for expert investigation, site visits, mediation expenses, and costs for a trial technician.[25]

In its opposition, Defendant argues Plaintiff should not recover the full amount it seeks for attorneys' fees or costs. Defendant argues Plaintiff did not offer sufficient evidence that Plaintiff's counsel charged reasonable rates and, as a result, the Court should reduce the hourly rates for several of Plaintiff's attorneys.[26] Defendant further argues Plaintiff did not exercise proper billing judgment and practiced vague block billing that leaves the Defendant unable to determine whether Plaintiff's counsel spent a reasonable number of hours on various tasks.[27] Defendant further opposes Plaintiff's request for $341,489.41 in costs.[28] Defendant argues the taxation of costs is a procedural matter governed by federal law, specifically Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.[29] Defendant argues federal law limits Plaintiff's recovery of costs to the items enumerated in 28 U.S.C. § 1920, which does not include fees for the trial preparation of Plaintiff's experts, mediation, and other expenses.[30]

The Court referred Plaintiff's motion to the assigned Magistrate Judge.[31] On June 16, 2026, the Magistrate Judge issued a Report and Recommendation, recommending the Court grant Plaintiff's motion and award Plaintiff $563,002.10 in attorneys' fees, the amount Plaintiff seeks.[32] The Magistrate Judge reasoned the rates charged were

---

[25] As with Plaintiff's request for attorneys' fees, while Plaintiff initially requested $340,779.42 in costs, Plaintiff filed a supplemental memorandum requesting $341,489.41 in costs, which includes costs incurred after it submitted its motion. *Id.* at pp. 14-15; R. Doc. 192 at p. 4.
[26] R. Doc. 182 at pp. 2-3.
[27] *Id.* at p. 4.
[28] *Id.* at p. 8.
[29] *Id.*
[30] *Id.* at pp. 9-11.
[31] R. Doc. 178.
[32] R. Doc. 203.

reasonable based on the affidavit of Plaintiff's board of trustees member, H. Mark Adams, who personally reviewed and approved payment of every invoice submitted by Plaintiff's counsel during the course of the litigation.[33] The Magistrate Judge concluded that Plaintiff's counsel charged Plaintiff reasonable rates for a reasonable number of hours given the attorneys' backgrounds and skills as well as the complex nature of the case.[34] The Magistrate Judge further recommended the Court award Plaintiff $341,489.41 in costs under La. R.S. 22:1892.[35]

Defendant timely filed objections to the Magistrate Judge's Report and Recommendation.[36] Defendant objected to the Magistrate Judge's recommendation that this Court award Plaintiff the full amount it sought in attorneys' fees, arguing that Plaintiff did not provide satisfactory evidence that its counsel's hourly rates were reasonable or that they exercised appropriate billing judgment and because they block billed.[37] Defendant further objected to the Magistrate Judge's recommendation that this Court award Plaintiff the full amount it sought in costs, arguing that federal law applies, not La. R.S. 22:1892.[38]

## **LEGAL STANDARD**

Magistrate judges are empowered by statute to preside over certain pretrial matters upon referral by a district judge.[39] "Federal Rule of Civil Procedure 54(d)(2)(D) authorizes referral of 'a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.'"[40] "A Magistrate Judge addressing [such a

---

[33] *Id.* at p. 8.
[34] *Id.* at pp. 9-17.
[35] *Id.* at pp. 28-29.
[36] R. Doc. 209.
[37] *Id.* at p. 1.
[38] *Id.* at pp. 5-7.
[39] 28 U.S.C. § 636(b)(1)(A).
[40] *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC*, No. 10-4151, 2014 WL 5039670, at *3 (E.D. La. Sept. 25, 2014); *see also Blair v. Sealift, Inc.*, 848 F. Supp. 670, 679 (E.D. La. 1994) (collecting

motion] under Rule 72(b) must prepare a 'recommended disposition,' to which the parties can object."[41] "Then, the district judge 'must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.'"[42]

A district court evaluating a magistrate judge's recommendation may adopt those portions of the recommendation to which no specific objection is made, as long as those recommendations are not clearly erroneous.[43] However, when a party makes "specific, written" objections to the report within fourteen days after being served with a copy of the magistrate judge's recommendations, the district court must undertake a *de novo* review of those contested aspects of the report.[44] "In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found."[45] "An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific."[46] If a party makes a specific objection, the Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."[47]

---

cases and holding "a post-trial motion for attorneys' fees which is not a discovery sanction is a dispositive matter; therefore, under 28 U.S.C. § 636(b)(1)(B), the magistrate judge's decision in [addressing] a post-trial award of attorneys' fees is subject to *de novo* review.").

[41] *Offshore Marine,* 2014 WL 5039670, at *3.

[42] *Id.* (quoting FED. R. CIV. P. 72(b)(3).

[43] 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

[44] *Id.*

[45] *Peterson v. Day*, No. CV 21-2027, 2022 WL 16758322, at *2 (E.D. La. Nov. 8, 2022).

[46] *Id.*

[47] Fed. R. Civ. P. 72(b)(3).

## <u>LAW AND ANALYSIS</u>

**I.** **Defendant's objections regarding the reasonableness of the hourly rates charged by three attorneys and whether counsel exercised appropriate billing judgment are sustained; Defendant's objection that the attorneys block billed is overruled.**

Defendant objects to the Magistrate Judge's recommendation that this Court award Plaintiff the full amount it seeks in attorneys' fees.[48] The Court must conduct *a de novo* review of this portion of the Magistrate Judge's recommendation.[49]

Plaintiff, Defendant, and the Magistrate Judge all analyzed the reasonableness of Plaintiff's request for attorneys' fees under federal law. In diversity cases, "[s]tate law controls both the award of and the reasonableness of [attorneys'] fees awarded where state law supplies the rule of decision,"[50] but courts in this Circuit have inconsistently adhered to this principle, often applying federal law to motions for attorneys' fees in diversity cases.[51] As neither party objected to the Magistrate Judge's analysis of the reasonableness of Plaintiff's attorneys' fees applying federal law, this Court also will apply federal law to its *de novo* review of the Magistrate Judge's recommendation that the Plaintiff be awarded the full amount it seeks in fees. In any event, in this case it makes no practical difference as the Louisiana factors used to determine the reasonableness of the award of attorneys' fees are similar to those considered under federal law.[52]

---

[48] R. Doc. 209 at p. 1.

[49] 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

[50] *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

[51] *Ferguson Enters., LLC v. GH Mech. & Servs. LLC*, No. CV 23-00511, 2024 WL 493302, at *4 (E.D. La. Feb. 8, 2024)( finding that plaintiff was entitled to reasonable attorney's fees on its Louisiana open account claim, and that, "[t]o calculate an attorneys' fees award, the district court first calculates the 'lodestar'" under the federal reasonableness analysis); *ADB Com. Constr. (Louisiana) LLC v. St. Charles Housing LP*, civ. A. No. 2:22-CV-01083, 2023 WL 8263433, at *1 (W.D. La. Nov. 29, 2023) (finding defendant "liable for breach of contract . . . plus costs and reasonable attorney fees under La. R.S. 9:2781" and applying the federal lodestar method to determine an award of reasonable attorneys' fees).

[52] *Whale Cap., L.P. v. Ridgeway*, No. CV 22-2570, 2024 WL 640026, at *1 (E.D. La. Feb. 15, 2024)(noting that Louisiana courts methodology for determining the reasonableness of attorneys' fees is similar to the federal methodology); *Wells Fargo Equip. Fin., Inc. v. Beaver Const., LLC*, No. CIV. 6:10-0386, 2011 WL 5525999, at *1 (W.D. La. Oct. 18, 2011)("[i]n determining the reasonableness of such fees, the Louisiana courts engage in an analysis using factors comparable to those outlined in the federal jurisprudence").

When attorneys' fees are authorized, the trial court is vested with much discretion in determining the amount of attorneys' fees.[53] "Reasonable attorneys' fees are determined through a two-step process."[54] "The district court must first calculate the lodestar—'the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.'"[55] "A court has discretion to reduce the number of hours awarded, or a percentage from the total, for vague and incomplete documentation insufficient to demonstrate billing judgment."[56] "The lodestar is presumed reasonable, but the court may then enhance or decrease it after considering the twelve *Johnson* factors."[57] Neither party objects to the Magistrate Judge's finding that neither an enhancement nor a decrease under the *Johnson* factors is warranted.[58] Accordingly, the Court will address only the lodestar calculation using a *de novo* review.[59]

As the party requesting fees, Plaintiff bears the burden of establishing the reasonableness of the fees by submitting adequate documentation—namely, time records, affidavits, and the like.[60] "The district court is not required 'to achieve auditing

---

[53] *Luv N' Care, Ltd. v. Rimar*, No. CV 15-2349, 2017 WL 127464, at *2 (W.D. La. Jan. 12, 2017).

[54] *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 415 (5th Cir. 2022).

[55] *Id.*

[56] *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. CV 17-491, 2021 WL 5833967, at *5 (E.D. La. Dec. 9, 2021).

[57] *Fessler*, 23 F.4th at 415.

[58] R. Doc. 203 at pp. 18-19.

[59] Plaintiff argues in its response to Defendant's objections that this Court should not review Defendant's objections *de novo* because Defendant merely re-asserts arguments it has already made in its opposition to Plaintiff's motion before the Magistrate Judge's Report and Recommendation was issued. R. Doc. 212 at p. 5 (referencing R. Doc. 182 at pp. 2-4). While Plaintiff cites a decision from this Court in which the Court declined to review a party's objections to a Report and Recommendation *de novo*, the Court in that case based its decision on the party's failure to add any additional support for his objections *and* his failure to address the Magistrate Judge's findings or object to any specific reasoning in the Report and Recommendation. *Welch v. Vannoy*, No. CV 19-2295, 2023 WL 8184313, at *7 (E.D. La. Nov. 27, 2023). In this case, Defendant has identified the specific findings and recommendations to which it objects and its bases for the objections. Accordingly, Defendant is entitled to a *de novo* review of the findings and recommendations to which it objected *Peterson*, 2022 WL 16758322, at *2.

[60] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (observing that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 520 (E.D. La. 2012).

8

perfection,' as '[t]he essential goal in shifting fees (to either party) is to do rough justice."[61] Indeed, the Court need not explicitly calculate the lodestar to make a reasonable award.[62]

Defendant objects to the Magistrate Judge's recommendation that Plaintiff be awarded $563,002.10 in attorneys' fees, arguing Plaintiff did not provide satisfactory evidence to support a finding that its attorneys charged reasonable rates or that the attorneys exercised billing judgment.[63]

First, Defendant argues the declaration of H. Mark Adams is deficient.[64] Defendant argues that, because Mr. Adams served as a member of Plaintiff's board of trustees and appeared as a witness for Plaintiff during trial, Mr. Adams' is not a neutral or unbiased witness, that his affidavit fails to establish the reasonableness of Plaintiff counsel's fees, and that it is error to rely on his declaration alone for a finding that counsel charged reasonable fees.[65]

Second, Defendant objects to the determination that Plaintiff's attorneys Camille Gauthier, James Gilbert, and Gabrielle Ball charged reasonable fees.[66] Defendant argues that Ms. Gauthier and Mr. Gilbert have less experience than Laurent Demosthenidy, Plaintiff's lead counsel in this case; yet, Mr. Gilbert charged the same hourly rate as Mr. Demosthenidy in 2025 and Ms. Gauthier charged hourly rates that exceeded Mr. Demosthenidy's in 2025 and 2026.[67] Defendant further argues that Ms. Ball's 2026 rate exceeds that of an attorney practicing in this area with six years of experience.[68]

---

[61] *DeLeon v. Abbott*, 687 F. App'x 340, 343 (5th Cir. 2017) (internal citations omitted).
[62] *No Barriers, Inc. v. Brinker Chili's Tex., Inc.*, 262 F.3d 496, 500-01 (5th Cir. 2001).
[63] R. Doc. 209 at p. 1.
[64] *Id.* at pp. 1-2.
[65] *Id.*
[66] *Id.* at p. 3.
[67] *Id.* at pp. 4-5.
[68] R. Doc. 182 at p. 4.

Accordingly, Defendant requests this Court reduce Ms. Gauthier, Mr. Gilbert's, and Ms. Ball's hourly rates.[69]

Finally, Defendant argues Plaintiff did not meet its burden of establishing its counsel exercised billing judgment.[70] Defendant argues Plaintiff produced only Mr. Demosthenidy's declaration that Plaintiff's counsel wrote off $130,802 worth of billing time in this matter, and that Plaintiff's counsel provided no other evidence to support this representation.[71] As a result, Defendant argues Plaintiff failed to meet its burden of proof that it exercised appropriate billing judgment.[72] Finally, Defendant argues it is error not to reduce amounts that contained block billing.[73]

### A. The hourly rates for Plaintiff's attorneys Camille Gauthier, James Gilbert, and Gabrielle Ball will be reduced.

The Court first will address Defendant's objection that several of Plaintiff's counsel did not charge a reasonable hourly rate. "'[R]easonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'"[74] "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill."[75] "An attorney's requested hourly rate is prima facie reasonable when [he or] she requests that the lodestar be computed at [his or] her 'customary billing rate,' the rate is within the range of prevailing market rates and the rate is not contested."[76] In *Tollet v. City of Kemah*, the Fifth Circuit

---

[69] R. Doc. 209 at p. 4.
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.* at p. 5.
[74] *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).
[75] *Blum*, 465 U.S. at 895 n.11.
[76] *White v. Imperial Adjustment Corp.*, No. 99-3804, 2005 WL 1578810, at *5 (E.D. La. June 28, 2005) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)).

held that "[g]enerally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."[77] The Court may reduce the hourly rate if it determines the requested rate does not fall within the range of prevailing market rates.[78] In making this determination, the Court "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony."[79]

Defendant objects to the finding that the following hourly rates are reasonable: Ms. Gautier's hourly rate of $400 in 2025 and $425 in 2026; Mr. Gilbert's hourly rate of $325 in 2025 and $350 in 2026; and Ms. Ball's hourly rate of $275 in 2026.[80]

Plaintiff provides only the declaration of Mr. Adams in support of its contention that its attorneys charged prevailing market hourly rates. In this declaration, Mr. Adams states that he has practiced law in the New Orleans area for over 40 years, has been a partner of the law firm Jones Walker since 1986, and that he is "familiar with the local rates charged by lawyers of the skill and reputation of Flanagan Partners LLP in complex litigation matters similar to this one."[81] Mr. Adams further declares that, based on his knowledge and experience, the rates charged by Plaintiff's counsel were "reasonable and well in line with comparable rates in this market for similar matters."[82]

Mr. Adams' declaration is helpful but does not explicitly state that he has recently surveyed the local market and does not discuss the qualifications of the attorneys. A party seeking attorneys' fees often establishes the reasonable hourly rate of a community through affidavits of other attorneys who affirmatively declare that they have surveyed

---

[77] 285 F.3d 357, 368 (5th Cir. 2002).
[78] *MGMTL, LLC v. Strategic Tech. Inst., Inc.*, 776 F. Supp. 3d 419, 478 (E.D. La. 2025).
[79] *Shaw v. Alpha Air & Heating, L.L.C.*, No. CV 22-3953, 2024 WL 1556861, at *3 (E.D. La. Apr. 10, 2024).
[80] R. Doc. 209 at pp. 3-4.
[81] R. Doc. 185-1 at p. 1.
[82] *Id.*

the fees charged by attorneys practicing in that area doing similar work and with similar qualifications.[83] For example, in *Heck v. Buhler*, the United States District Court for the Middle District of Louisiana found the requested rates of two attorneys reasonable when plaintiffs produced multiple affidavits from "seasoned litigators with extensive practice" in the relevant area of law stating that the attorneys' requested rate of $300 an hour was "'well within the normal range of compensation charged for such legal services' in the Middle District of Louisiana."[84] Similarly, in *McKesson v. City of Baton Rouge*, the United States District Court for the Middle District of Louisiana found attorneys' requested rates reasonable when plaintiff submitted multiple affidavits from uninvolved attorneys that discussed the "experience and qualifications" of plaintiffs' counsel and stated that the requested rates were "consistent with the local market for attorneys of their qualifications and experience."[85]

In this case, Plaintiff provides only a single affidavit, and that from an attorney who is affiliated with the Plaintiff in this case. Although the Court does not question Mr. Adams' integrity and experience, the Court does question the sufficiency of Mr. Adams' affidavit, particularly in light of his involvement in this case. Mr. Adams, as the chair of Plaintiff's board of trustees and later as its "legal liaison," approved all of Plaintiff counsel's invoices as they were submitted[86]—he is not like the "other attorneys" in *Heck* and *Mckesson* who had no connection to the parties or the litigation but provided affidavits to support the reasonableness of counsels' rates.[87] Furthermore, Mr. Adams does not detail Plaintiff counsel's levels of experience, qualifications, or other qualities

---

[83] *See Tollett*, 285 F.3d at 368.
[84] No. 3:07-CV-00021-BAJ, 2014 WL 2003270, at *2 (M.D. La. May 15, 2014).
[85] No. CV 16-520-JWD-RLB, 2017 WL 11675692, at *4 (M.D. La. Nov. 16, 2017).
[86] R. Doc. 185-1 at pp. 1-2.
[87] *See Heck*, 2014 WL 2003270, at *2; *McKesson,* 2017 WL 11675692, at *4.

that would justify their hourly rates in comparison to other attorneys of the same experience and qualifications practicing in this market. Instead, Mr. Adams provides a conclusory assertion that Plaintiff's counsel charged reasonable fees based on his "knowledge and experience" and his irrelevant observation that these attorneys charged rates that are "significantly lower than [his] own hourly rates."[88] The Court has a great deal of discretion in determining the reasonableness of attorneys' fees.[89] Rather than base its reasonableness determination solely on Mr. Adams' declaration, the Court will fashion a reasonable fee for these three Plaintiff's attorneys based on the Adams affidavit, the Court's own knowledge and experience, as well as recent case law from this district.[90]

The Court first addresses the rates of Ms. Gauthier. As of 2026, Ms. Gauthier has thirteen years' experience as a practicing attorney.[91] Courts in this district have reduced the hourly rates of attorneys with a similar range of experience as Ms. Gauthier to between $275 and $350 dollars an hour.[92] In fact, in *MGMTL, LLC v. Strategic Tech. Inst., Inc.*, Chief Judge Vitter of this district court awarded Gautier an hourly rate in the year 2023 of $275 per hour.[93]

Plaintiff has not met its burden of proving Ms. Gauthier's requested rate is reasonable in light of both the market rate for attorneys of similar experience in this district and the hourly rates of the other attorneys in this case. For 2025 and 2026, Plaintiff counsel's firm charged a higher rate for Ms. Gauthier's services than for Mr.

---

[88] R. Doc. 185-1 at p. 1.

[89] *Luv N' Care, Ltd. v. Rimar*, No. CV 15-2349, 2017 WL 127464, at *2 (W.D. La. Jan. 12, 2017).

[90] *Shaw*, 2024 WL 1556861, at *3.

[91] R. Doc. 176-10 at p. 14.

[92] *Shaw v. Alpha Air & Heating, L.L.C.*, No. CV 22-3953, 2024 WL 1556861, at *3 (E.D. La. Apr. 10, 2024)(finding an hourly rate of $325 reasonable for an attorney with 13 to 14 years of experience)*; Grant v. Gusman*, No. CV 17-2797, 2023 WL 315937, at *13 (E.D. La. Jan. 19, 2023)(finding an hourly rate of $275 reasonable for an attorney with 11 years' experience).

[93] 776 F. Supp. 3d 419, 478 (E.D. La. 2025).

Demosthenidy's[94] even though Mr. Demosthenidy served as lead counsel in this matter and has twenty years' experience as a practicing attorney in this area of law. Moreover, considering caselaw from this district, the hourly rate for attorneys with Ms. Gauthier's level of experience is less than the $400 dollar range that Plaintiff argues is reasonable.[95] Although Ms. Gauthier has gained more experience and expertise since Judge Vitter awarded her an hourly rate of $275 when trying a case in 2023,[96] the three years of experience she has gained since then do not justify the requested increase in her hourly rate. Accordingly, the Court will reduce Ms. Gauthier's hourly rate to $325 per hour for 2025 and $350 per hour for 2026.

The Court now addresses the rates of Mr. Gilbert and Ms. Ball. As of 2026, Mr. Gilbert has nine years of experience as a practicing attorney while Ms. Ball has six years of experience.[97] Courts in this district have awarded hourly rates of $300 or less to attorneys with greater experience than Mr. Gilbert and Ms. Ball. In *Grant v. Gusman*, Judge Brown on this district court awarded an attorney with 11 years' experience an hourly rate of $275.[98] Similarly, in *Master Insulation, Inc. v. GH Mech. & Servs., LLC*, Judge Fallon recently awarded an attorney with eleven years' experience an hourly rate of $300.[99] Considering these rates along with the fact that the Court is awarding Ms. Gauthier hourly rates of $325 and $350, the Court will award Mr. Gilbert an hourly rate of $275 for 2025 and $300 for 2026 and Ms. Ball $250 for 2026.

During oral argument before the Magistrate Judge, Plaintiff's counsel requested that, were the Magistrate Judge to reduce any of Plaintiff counsel's requested rates, the

---

[94] Mr. Demesthenidy charged Plaintiff hourly rates of $325 for 2025 and $390 for 2026. R. Doc. 195 at p. 2.
[95] *Shaw*, 2024 WL 1556861, at *3*; Grant*, 2023 WL 315937, at *13.
[96] *MGMTL* 776 F. Supp. 3d at 478.
[97] R. Doc. 176-10 at pp. 17-19.
[98] No. CV 17-2797, 2023 WL 315937, at *13 (E.D. La. Jan. 19, 2023).
[99] No. CV 23-5638, 2026 WL 205577, at *9 (E.D. La. Jan. 27, 2026).

Magistrate Judge increase the rates for Plaintiff's counsel who reduced their rates as a courtesy to Plaintiff because of its non-profit status.[100] In its motion for attorneys' fees and costs, Plaintiff represents that attorneys Sean Brady, Harold Flanagan, and Laurent Demosthenidy each charged reduced hourly rates "to assist [Plaintiff] in recovering amounts owed to it by its insurer."[101] However, Plaintiff did not provide these attorneys' regular hourly rates or request an increase in the rates the attorneys charged Plaintiff in its motion for attorneys' fees.[102] Based on Plaintiff's representation that these were reduced rates and that Plaintiff's counsel did not bill Plaintiff for any paralegal time spent on this matter, the Magistrate Judge recommended the Court consider increasing the rates for Mr. Brady, Mr. Flanagan, and Mr. Demosthenidy, in the event it reduced the hourly fees for Ms. Gauthier, Mr. Gilbert, and Ms. Ball.[103] In its response to Defendant's objections, in a footnote, Plaintiff reiterated its request that the Court compensate it for any reduction to counsel's hourly rates by increasing the hourly rates for Mr. Brady, Mr. Flanagan, and Mr. Demosthenidy.[104]

Plaintiff's motion for attorneys' fees and costs did not seek hourly rates for Mr. Brady, Mr. Flanagan, and Mr. Demosthenidy in excess of the rates actually charged to the Plaintiff.[105] Nor did the motion disclose these attorneys' regular hourly rates or the terms of any "package deal" on rates.[106] Only at oral argument on the motion for attorneys' fees and costs, and in Plaintiff's reply to Defendant's objection to the Report and Recommendation, is the possibility of an increase in these attorneys' hourly fees raised. Because the Plaintiff did not request an increase in these attorneys' rates in its motion for

---

[100] R. Doc. 203 at p. 9, n.41.
[101] R. Doc. 176-1 at p. 8.
[102] *Id.*
[103] R. Doc. 203 at p. 9, n.41.
[104] R. Doc. 212 at p. 6, n.22.
[105] R. Doc. 176-1 at pp. 8-9.
[106] *See id.*

attorneys' fees, Defendant did not object to the fees sought for Mr. Brady, Mr. Flanagan, or Mr. Demosthenidy. The Court has no evidence from which it can discern that the rates awarded to these three attorneys are below the market rates for attorneys with their levels of experience in this market. In fact, in the motion for attorneys' fees and costs, Plaintiff's counsel stated, "[t]he rates charged by Rayne's counsel are reasonable rates in this market and are in line with the experience and ability of Rayne's lawyers."[107] When the requested hourly rate is not contested, like in this case, it is prima facie reasonable.[108] The rates of these three attorneys were not contested. Based on the Court's experience and caselaw in our district, the Court finds these rates to be reasonable, and they will not be increased or reduced.[109] The Court will not entertain a "footnote request" for a rate increase at this stage.

### B.     Plaintiff did not meet its burden of proving its counsel exercised appropriate billing judgment, and their fee will be reduced; Plaintiff's attorneys' fees will not be reduced for block billing.

The Court will now address Defendant's objection regarding Plaintiff's billing judgment and practices. Defendant objects to the Plaintiff being awarded $563,002.10 in attorneys' fees, arguing Plaintiff did not provide satisfactory evidence that its attorneys exercised appropriate billing judgment.[110] Defendant argues Plaintiff relies solely on Mr. Demosthenidy's declaration attesting that Plaintiff's counsel "wrote off $130,802 of attorney time that was recorded but not sought in connection with Rayne's application

---

[107] *Id.* at p. 8.

[108] *Girod LoanCo, L.L.C. v. Klein*, No. CV 24-2366, 2025 WL 1474736, at *3 (E.D. La. May 22, 2025)(citing *White v. Imperial Adjustment Corp.*, No. 99-3804, 2005 WL 1578810, at *5 (E.D. La. June 28, 2005)).

[109] *See, e.g.*, *Archer W. Contractors, L.L.C. v. McDonnel Grp., L.L.C.*, 2025 WL 2088911, at *4-6 (E.D. La. July 9, 2025) (finding hourly rates of $455 for attorney with 36 years of experience and $345 for attorney with 30 years of experience to be reasonable*); Hubert v. Curren*, No. CV 18-7669, 2018 WL 4963595, at *4 (E.D. La. Oct. 15, 2018) (assigning an hourly rate of $300 as reasonable for an attorney with 17 years of experience where $400 per hour had been requested).

[110] R. Doc. 209 at p. 1.

for fees and costs" and did not charge for paralegal work.[111] Defendant further argues that the attorneys' fees should be reduced for amounts that contained block billing.[112]

"Plaintiffs seeking attorney's fees have the burden of showing the reasonableness of the hours billed and that the attorneys exercised billing judgment."[113] Billing judgment "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours."[114] To meet this burden, parties must provide "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."[115] "The Fifth Circuit has repeatedly determined that bald assertions regarding the exercise of billing judgment are insufficient."[116] "[I]n determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours."[117] Despite this custom, "[f]ailing to provide contemporaneous billing statements does not preclude an award of fees *per se*, as long as the evidence produced is adequate to determine reasonable hours."[118] "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the

---

[111] R. Doc. 185-2.

[112] R. Doc. 209 at p. 5.

[113] *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

[114] *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).

[115] *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 799 (5th Cir.2006).

[116] *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *3 (N.D. Tex. Feb. 11, 2011)(*citing Saizan,* 448 F.3d at 800 (concluding that fee applicant's arguments for neglecting to list unbilled time were "unconvincing " and upholding reductions for lack of billing judgment); *see also Hopwood v. Texas,* 236 F.3d 256, 279 (5th Cir.2000) (upholding reductions for lack of billing judgment where there was evidence of inadequate time entries and duplicative work product, and finding that lead attorney's affidavit that he exercised billing judgment, without more, did not demonstrate abuse of discretion).

[117] *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

[118] *Id.* at 325.

exercise of billing judgment."[119] Courts in this circuit have applied 5-15% reductions in awards of attorneys' fees for counsel's lack of billing judgment.[120]

Parties do not produce sufficient evidence of billing judgment when they do not submit documentation confirming counsel's claims that they wrote off time. In *Cox v. Mignon Faget*, Judge Africk of this district court found a plaintiff did not offer sufficient evidence of billing judgment when counsel did not provide "documentation of unbilled time" and instead submitted "a spreadsheet of their billed time that [allegedly] excluded time written off."[121] Judge Africk reduced the award of attorneys' fees by 5% because the plaintiff had failed to provide any documentation confirming counsel's assertions that they wrote off time.[122] Similarly, in *Cajun Services Unlimited, LLC v. Benton Energy Service Company*, Judge Ashe of this district court reduced an award of attorneys fees by 10% when counsel failed to provide evidence of billing judgment beyond their "declarations attesting" that they exercised such judgment.[123]

Plaintiff has failed to meet its burden of proving that its counsel exercised billing judgment. The Fifth Circuit has held that parties must provide "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."[124] Plaintiff offers the declaration of Mr. Demosthenidy in which he states that Plaintiff's counsel "wrote off $130,802 of attorney time that was recorded but not sought in connection with Rayne's application for fees and costs."[125] Mr. Demosthenidy further

---

[119] *Saizan*, 448 F.3d at 799.

[120] *See id.* at 800 (imposing a 10% reduction for lack of billing judgment); *see also Walker*, 99 F.3d at 770 (imposing 15% reduction for lack of billing judgment); *Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987) (imposing a 13% reduction for inadequate documentation); *Tech Pharm. Servs.*, 298 F. Supp. 3d at 906 (reducing the number of each firm's hours by 6% for lack of billing judgment); *Innovention Toys, LLC v. MGA Entm't, Inc.*, 2014 WL 1276346, at *4 (E.D. La. Mar. 27, 2014) (reducing the submitted hours by 10% for lack of evidence of billing judgment).

[121] No. CV 24-1068, 2025 WL 2022669, at *8 (E.D. La. July 18, 2025).

[122] *Id.* at *9.

[123] No. CV 17-491, 2021 WL 5833967, at *5 (E.D. La. Dec. 9, 2021).

[124] *Saizan,* 448 F.3d at 799.

[125] R. Doc. 185-2.

states in his supplemental declaration that these write offs "included any time recorded for two additional attorney timekeepers who assisted with discrete tasks when multiple motion or opposition deadlines fell on the same deadline" and that no paralegal time was billed.[126] However, Plaintiff has not provided any detailed evidence documenting these write offs. First, Plaintiff does not offer attorney billing records showing the hours written off as unproductive, excessive, or redundant.[127] While such contemporaneous billing statements are not necessarily required, like counsel in *Cox* and *Cajun Services*, Plaintiff fails to provide *any* documentation of the work written off that would allow the Court to determine whether counsel exercised adequate billing judgment. Instead, Plaintiff essentially provides bald assertions that counsel's firm wrote off time rather than actual evidence of hours written off, which courts in this circuit have found insufficient to demonstrate billing judgment.[128] Second, Plaintiff's counsel did not provide any evidence that paralegals worked on the case but their time was not billed. As Plaintiff has not provided contemporaneous records or other forms of evidence showing that the firm actually wrote off time or that it did not charge for paralegals, it has failed to offer documentation sufficient to demonstrate billing judgment.[129] Accordingly, Plaintiff has failed to carry its burden of demonstrating its counsel exercised billing judgment, and the Court will apply a 5% reduction to Plaintiff's attorneys' fees award.

The Court will not reduce Plaintiff's attorneys' fees for use of block billing. Although Plaintiff's counsel's occasionally practiced block billing, "a reduction for block billing is not automatic" so long as the evidence produced is adequate to determine

---

[126] *Id.*
[127] *Saizan,* 448 F.3d at 799.
[128] *Fralick v. Plumbers & Pipefitters Nat. Pension Fund,* No. 3:09-CV-0752-D, 2011 WL 487754, at *3 (N.D. Tex. Feb. 11, 2011).
[129] *See Saizan,* 448 F.3d at 799.

whether counsel expended reasonable hours.[130] The Court finds counsels' descriptions sufficiently detailed to allow the Court to determine that they expended a reasonable number of hours in this matter. As a result, the Court will not reduce Plaintiff's attorneys' fees for use of block billing.[131]

## II. Defendant's objection to the award of costs under La.R.S. 22:1892 is sustained; Plaintiff will be awarded costs under federal law.

The Magistrate Judge recommended the Court award Plaintiff $341,489.41 in costs under La R.S. 22:1892.[132] Defendant objected to the recommendation and argues that in a diversity action it is error to award costs under La. R.S. 22:1892 rather than under Fed R. Civ. P. 54(d) and 28 U.S.C. § 1920.[133] The costs awarded to Plaintiff differ greatly depending on whether this Court applies federal law or La. R.S. 22:1892. 28 U.S.C. § 1920 does not provide for recovery of many items, including "expert witness fees, e-discovery expenses, and jury consultant fees."[134] The Court must conduct *a de novo* review of this portion of the Magistrate Judge's recommendation to determine whether state or federal law applies to the award of costs.[135]

Because this is a diversity action, the Court faces a choice-of-law problem: whether to apply state or federal law. Fortunately, the recent United States Supreme Court decision in *Berk v. Choy*[136] guides this analysis. *Berk* involved a state medical malpractice claim filed in federal court by way of diversity jurisdiction.[137] Delaware law required an affidavit of merit signed by a medical professional to accompany a medical malpractice

---

[130] *Fralick, 2011 WL 487754, at *5.*
[131] As neither party objects to the Magistrate Judge's finding that no adjustment to the lodestar under the *Johnson* factors is warranted, the Court will not order such an adjustment.
[132] R. Doc. 203 at pp. 28-29.
[133] R. Doc. 182 at p. 8.
[134] *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 342 (2019).
[135] Fed. R. Civ. P. 72(b)(3).
[136] 607 U.S. 187, 192 (2026).
[137] *Id.* at 190.

complaint.[138] The plaintiff, who did not file an affidavit and was unable to do so in the extended time the district court granted, then claimed that the state law was unenforceable in federal court, because it displaced Fed. R. Civ. P. 8, which "prescribes the information a plaintiff must present about the merits of his claim at the outset of litigation."[139] The Supreme Court found the federal and state rules to be in direct conflict, because the affidavit requirement "demands more," since "[u]nder Rule 8, factual allegations are sufficient, but under the Delaware law, the plaintiff needs evidence too."[140] The Supreme Court applied Rule 8: "Because Rule 8 and [the Delaware law] answer the same question, Rule 8 governs so long as it is valid under the Rules Enabling Act."[141]

The Rules Enabling Act authorizes the Supreme Court to adopt uniform rules of procedure for district courts.[142] "The Rules of Decision Act[143] directs federal courts to apply state substantive law, leaving federal law to cover the rest."[144] The "Rules of Decision Act dictates that state substantive law must yield if the Constitution, a treaty, or a statute 'otherwise require(s) or provides(s).'"[145] Deciding whether a state law is substantive usually requires a court to enter "*Erie*'s murky waters."[146] This is not the case when a Federal Rule of Civil Procedure is on point, in which case the court may bypass *Erie's* inquiry altogether.[147]

In *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*,[148] the Supreme Court found the question of whether a federal rule replaces a state rule to be straightforward.[149]

---

[138] *Id.*
[139] *Id.* at 193.
[140] *Id.* at 194.
[141] *Id.* at 198.
[142] 28 U.S.C. § 2072(a).
[143] 28 U.S.C. § 1652.
[144] *Berk*, 607 U.S. at 192.
[145] *Id.*
[146] *Berk*, 607 U.S. at 192.
[147] *Id.*
[148] 559 U.S. 393, 398 (2010)).
[149] *Id.*

First, the court must determine whether there is a Federal Rule of Civil Procedure on point; if so, the federal rule displaces state law whether the state law is substantive or procedural, unless the federal rule "exceeds statutory authorization or Congress's rulemaking power."[150] A Federal Rule of Civil Procedure is on point when it "answers the question in dispute" and it is valid under the Rules Enabling Act.[151] To determine whether a rule is valid under the Rules Enabling Act, the only question is whether the rule really regulates procedure.[152]

Under *Shady Grove*, the first step in the analysis is framing the question in dispute. In this diversity action, the Court frames the question in dispute as whether the Plaintiff, as a prevailing party, is entitled to recover costs and, if so, which costs. Fed. R Civ. P. 54(d)(1) answers this question;

> ***Costs Other Than Attorney's Fees.*** Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

There is no federal statute, no Federal Rule of Civil Procedure, and no court order providing otherwise in this case. As a result, costs are allowed to the prevailing party.

28 U.S.C. § 1920 specifies those costs a judge or clerk of a federal court may tax as costs in federal court:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

---

[150] *Id.*
[151] *Id.*
[152] *Id.* at 410.

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title; [and]

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Because Fed. R. Civ. P. 54(d)(1), as implemented by 28 U.S.C. § 1920, answers the disputed question, the federal rule will govern if it is valid under the Rules Enabling Act, which authorizes the Supreme Court to adopt rules of procedure, but not substantive rules.[153] "To determine whether a Rule is valid under the Rules Enabling Act, the only question is whether it really regulates procedure."[154] "[W]hat matters is what the Rule itself regulates: If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid."[155] Although the Rule may have some "practical effect on the parties' rights," it is procedural if it regulates "only the process for enforcing those rights," not "the rights themselves, the available remedies, or the rules of decision."[156]

In *Shady Grove*, the Supreme Court addressed whether Fed. R. Civ. P. 23 displaced a substantive New York state law.[157] After determining that Rule 23 answered the question in dispute, the plurality opinion analyzed whether Rule 23 was valid under the Rules Enabling Act or whether the rule exceeded statutory authorization or Congress's rulemaking power.[158] In this analysis, the plurality declined to consider whether the New

---

[153] 28 U.S.C. § 2072(a).
[154] *Berk*, 607 U.S. at 192.
[155] *Shady Grove*, 559 U.S. at 407 (quoting *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 446 (1946)).
[156] *Id.* at 407–408.
[157] *Id.* at 410.
[158] *See id.* at 406.

York state law that conflicted with Rule 23 was substantive or procedural because courts, in analyzing whether a Federal Rule is valid under the Rules Enabling Act, should focus only on whether the *Federal Rule* is substantive or procedural.[159] Specifically, the plurality stated that "it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule."[160] Accordingly, in determining whether a Rule of Civil Procedure is valid under the Rules Enabling Act, courts should look only to whether the Federal Rule regulates procedure, "regardless of [the federal rule's] incidental effect upon state-created rights."[161]

As a result, this Court must determine only whether Rule 54(d)(1) really regulates procedure. The Supreme Court has stated that, "[i]n applying this analysis, we have 'rejected every statutory challenge to a Federal Rule that has come before us."[162] This Court will not be the first to declare that a Federal Rule of Civil Procedure does not really regulate procedure.[163] Rule 54(d)(1) both answers the disputed question—whether the Plaintiff, as a prevailing party, is entitled to recover costs and, if so, which costs—and is valid under the Rules Enabling Act as it is a federal procedural rule. As the Supreme Court explained in *Shady Grove*, when analyzing whether a Federal Rule is valid under the Rules Enabling Act, the Court focuses on whether the Federal Rule is substantive or procedural, not whether the affected state law is substantive or procedural.[164] Fed. R. Civ. P. 54(d)(1) is procedural and does not exceed statutory authorization or Congress'

---

[159] *Id.* at 409.

[160] *Id.* at 410.

[161] *Id.* Even if the Court were to consider whether La. R.S. 22:1892 creates a substantive right in determining Rule 54(d)'s validity under the Rules Enabling Act, as discussed *infra*, the Fifth Circuit has found the award of costs to be procedural. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 688 (5th Cir. 1991).

[162] *Berk v. Choy*, 607 U.S. 187, 199 (2026) (citing *Shady Grove*, 559 U.S. at 407).

[163] In *Lifepoint Church of Sulphur v. Church Mut. Ins. Co. S.I.,* the only federal decision found addressing this specific issue, a judge in the Western District of Louisiana found that, even when a plaintiff recovers under La. R.S. 22:1892, federal law applies to the taxation of costs. *Lifepoint Church of Sulphur v. Church Mut. Ins. Co. S.I.,* Judge Cain's Memorandum Order, ECF No. 2:22-cv-02080 122 pp. 1-2.

[164] 559 U.S. at 410.

rulemaking power.

Because there is a federal rule on point, the Court need not engage in an analysis under *Erie R.R. v. Tompkins*.[165] *Erie* is not the appropriate test of the validity and applicability of a Federal Rule of Civil Procedure. "The *Erie* rule has never been invoked to void a Federal Rule."[166]

> As the Supreme Court has said in *Hanna v. Plumer*:
>
> It is true that both the Enabling Act and the Erie rule say, roughly, that federal courts are to apply state 'substantive' law and federal 'procedural' law, but from that it need not follow that the tests are identical. For they were designed to control very different sorts of decisions. When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* Choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.[167]

Once a federal rule is found to be on point and to answer the disputed question, the Court must apply the federal rule, and "can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions."[168] This is the end of the analysis under *Berk*—the federal rule applies.

The Plaintiff skips the *Berk* and *Shady Grove* analysis of the disputed question and whether a federal rule answers it. Instead, Plaintiff argues that, under Louisiana state law, the right to recover costs based on La. R.S. 22:1892 is substantive, not procedural, and thus, under *Erie*, the statute applies to allow an insured to recover all costs related to an insurer's bad faith.[169] The Plaintiff's argument focuses on whether Louisiana state law is

---

[165] 304 U.S. 64 (1938).
[166] *Hanna v. Plumer*, 380 U.S. 460, 470 (1965).
[167] *Id.* at 471.
[168] *Id.*
[169] R. Doc. 176-1 at p. 10; R. Doc. 185 at p. 8.

procedural or substantive, rather than on whether Rule 54(d) is procedural or substantive. This does not comply with *Shady Grove*. Plaintiff argues that La. R.S. 22:1892 provides a "substantive right of action for a victim of insurer's bad faith to recover costs outside of the costs available to an ordinary prevailing party under Fed. R. Civ. P. 54 and 28 U.S.C. 1920."[170] The Plaintiff argues the statute's damages multiplier, attorney fees, and costs are all penalties.[171]

The Magistrate Judge acknowledged *Berk* but framed the disputed question as "how to calculate the size of the penalty to which a bad faith insurer is subject under Louisiana law."[172] The Magistrate Judge compared Rule 54(d)(1) and La. R.S. 22:1892. Using this comparison, the Magistrate Judge found Rule 54(d)(1) does not purport to alter the arithmetic that Louisiana law uses to calculate an insured's penalty.[173] Thus, the Magistrate Judge found there is no federal rule on point, and the Court must wade into "*Erie*'s murky waters."[174]

Based on *Berk* and *Shady Grove*, the Plaintiff's and the Magistrate Judge's analyses are incorrect, as they focused on whether the state rule was substantive, not whether the Federal Rule was. Even if the Court were to agree that there is no federal rule on point and engage in an *Erie* analysis, the Court still would calculate Plaintiff's award of costs under federal law. Under *Erie,* whether state or federal law applies in a diversity case depends on whether the state law is substantive or procedural.[175] The Plaintiff argues La. R.S. 22:1892 provides a substantive right of action for the recovery of attorneys' fees and costs as a part of the penalty for bad faith. Thus, the Plaintiff argues the right to

---

[170] R. Doc. 212 at p. 7.
[171] *Id.*
[172] R. Doc. 203 at p. 24.
[173] *Id.* at p. 25.
[174] *Id.*; *see Berk v. Choy*, 607 U.S. 187, 192 (2026).
[175] *Exxon Corp. v. Burglin,* 42 F.3d 948, 950 (5th Cir.1995) (citing *Erie,* 304 U.S. 64).

recover the penalty is substantive under *Erie R.R. v. Tompkins*[176] and, under *Erie*, Louisiana law applies to the award of penalties against the Defendant, including the cost component.[177]

"Whether a particular provision is substantive or procedural for *Erie* purposes is determined by looking to the 'twin aims' of the *Erie* doctrine: the discouragement of forum shopping and the avoidance of the inequitable administration of the laws."[178] Controlling Fifth Circuit precedent exists on the issue of whether, under an *Erie* analysis, a prevailing plaintiff in a diversity action recovers costs pursuant to Louisiana state law or federal law. In *Cates v. Sears, Roebuck & Co.*, the Fifth Circuit analyzed whether a plaintiff in a diversity case can recover expert witness fees under Louisiana law as opposed to federal law.[179] The plaintiff in *Cates* brought negligence and redhibition claims against Sears, Roebuck for selling him an allegedly defective saw.[180] The jury awarded plaintiff damages but the trial judge did not award him costs for expert witness fees.[181] On appeal, the plaintiff argued that, because he recovered damages under Louisiana redhibition law, he was entitled to compensation for expert witnesses pursuant to La. R.S. 13:3666, which allows prevailing parties to receive costs for expert witnesses.[182] The Fifth Circuit denied the plaintiff's request and quoted 10 C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure* § 2669 (1983), which provides:

> The award of costs is governed by federal law. There has been some suggestion that in diversity cases federal courts should look to state law as to costs, in deference to the doctrine of *Erie Railroad Company v. Tompkins*. With regard to ordinary items of costs, particularly those mentioned in Section 1920 of Title 28, the suggestion clearly is unsound. Variations between state and federal practice in the

---

[176] 304 U.S. 64 (1938).
[177] R. Doc. 176-1 at p. 10.
[178] *Carter v. Gen. Motors Corp.*, 983 F.2d 40, 43 (5th Cir. 1993)(citing *Herbert v. Wal–Mart Stores, Inc.*, 911 F.2d 1044, 1047 (5th Cir.1990)).
[179] 928 F.2d 679, 688 (5th Cir. 1991).
[180] *Id.* at 682.
[181] *Id.*
[182] *Id.* at 687.

assessment of costs after the case has been disposed of do not appear likely to promote forum shopping or to affect "the outcome of the litigation" in any significant way and therefore employing federal law does not violate the underlying policies of the *Erie* principle. Furthermore, to require federal courts to look to state law in diversity cases would amount to treating the sections of the Judicial Code regulating costs and Rule 54(d) as invalid in those actions, a possibility that conceivably might have been justified under the Erie opinion itself but one that has been uniformly rejected by scholars and is not supported by the case law since the *Erie* decision.[183]

The *Cates* court acknowledged that, twenty-three years earlier, in *Henning v. Lake Charles Harbor and Terminal Dist.*, the Fifth Circuit allowed a party in a diversity proceeding to recover expert fees under Louisiana law.[184] In *Henning*, a Louisiana political subdivision filed suit to condemn 26.62 acres of land owned by private individuals.[185] A nonresident owner of the Louisiana land removed the expropriation proceeding to federal court.[186] The trial court issued an order of expropriation and fixed just compensation for the landowners including an award under La. R.S. 13:3666 of $5,400, representing the amount the landowners owed in expert fees to consulting geologists, consulting engineers, and appraisers.[187] On appeal, the landowners challenged the taking's constitutionality and the amount of compensation they received for the condemnation.[188] The Fifth Circuit, without ruling on the constitutionality of the taking, upheld the trial court's award of $5,400 in expert fees based on Louisiana law because article I, section 2 of the 1921 Louisiana Constitution provides that "private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."[189] The Fifth Circuit reasoned that, even though federal courts ordinarily may not tax costs in excess of federal statutory amounts, an award of expert

---

[183] *Id.* at 688.
[184] *Id.* (*citing Henning v. Lake Charles Harbor & Terminal Dist.*, 387 F.2d 264, 267 (5th Cir. 1968)).
[185] Henning, 387 F.2d at 265.
[186] *Id.*
[187] *Id.*
[188] *Id.*
[189] *See id.* at 267.

costs under La. R.S. 13:3666 was necessary to provide the property owners the just and adequate compensation for their land the Louisiana Constitution guarantees them.[190] The court held that awarding these property owners costs under La. R.S. 13:3666 "is a substantive requirement of Louisiana law, a substantive right of the landowners, and binding upon [the Fifth Circuit]" pursuant to *Erie*.[191]

The Fifth Circuit explicitly limited the *Henning* holding to Louisiana eminent domain proceedings in which the Louisiana Constitution mandates the landowner's full financial recovery.[192] The Fifth Circuit in *Cates* declined to award the plaintiff costs under Louisiana law because the plaintiff in a negligence and redhibition claim has no special state constitutional protection comparable to that of the landowners in *Henning*. As a result, the Fifth Circuit found that "no violence is done to the twin aims of the *Erie* doctrine by the application of federal procedural provisions to the taxing of costs, including expert witness fees."[193] The *Cates* court explained that "absent an express indication from the Louisiana legislature, or its courts, of Louisiana's special interest in providing litigants with recovery of expert witness fees in redhibition cases, the trial court did not err in declining to exceed the statutory witness compensation provisions" under federal law.[194] Since then, the Fifth Circuit in *Chevalier v. Reliance Ins. Co. of Illinois* has examined *Henning* and confirmed that it is confined to Louisiana eminent domain proceedings.[195]

Plaintiff argues it is entitled to recover all litigation-related costs.[196] In support of its argument, Plaintiff cites to several Supreme Court cases it argues hold that the

---

[190] *Id.*
[191] *Id.*
[192] *See Cates*, 928 F.2d at 689.
[193] *Id.*
[194] *Id.*
[195] 953 F.2d 877, 886 (5th Cir. 1992); *see also Seal v. Knorpp,* 957 F.2d 1230, 1237 (5th Cir. 1992).
[196] R. Doc. 176-1 at p. 10; R. Doc. 185 at p. 8.

recovery of costs is substantive,[197] but those cases concern attorneys' fees and not costs.[198] It is well settled that in diversity cases, state law controls the award of attorneys' fees, a substantive right, where state law supplies the rule of decision.[199] The same is not true for the award of costs.[200] Plaintiff cites *Chambers v. NASCO, Inc.*[201] and argues that "[a]n award of penalties, attorney fees, and costs under a bad faith statute is substantive and not procedural . . . ."[202] This sentence is not a quotation from *Chambers*, which awarded *attorneys' fees*, not *costs*, as a sanction for bad faith conduct under the court's inherent power when the actions were not adequately sanctioned under the Federal Rules.[203] *Chambers* does not stand for the proposition that the award of costs under La. R.S. 22:1892 is substantive.[204]

Plaintiff acknowledges the holding in *Cates*—that the Louisiana Legislature or Louisiana courts must expressly indicate Louisiana's special interest in providing litigants with a special form of recovery for parties to receive costs under state law—but nevertheless argues the Court should calculate Plaintiff's costs under La. R.S. 22:1892, not federal law.[205] Plaintiff argues the Louisiana Legislature and Louisiana courts have expressly indicated that the state of Louisiana has a special interest in providing insureds with a mechanism for recovering all costs incurred because of an insurer's bad faith.[206] Plaintiff argues by including "costs" as part of La. R.S. 22:1892's penalty provision, the

---

[197] R. Doc. 176-1 at p. 11; R. Doc. 185 at p. 8.

[198] *See e.g., People of Sioux Cnty., Neb., v. Nat'l Sur. Co.*, 276 U.S. 238, 244 (1928).

[199] *Sixela Inv. Grp. v. Hope Fed. Credit Union*, No. CV 23-0277, 2025 WL 2882059, at *3 (W.D. La. Oct. 8, 2025), *aff'd sub nom. Sixela Inv. Grp. v. Hope Fed. Credit Union*, No. 25 30345, 2026 WL 2244193 (5th Cir. 2026); *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

[200] *Carter v. Gen. Motors Corp.*, 983 F.2d 40, 43 (5th Cir. 1993).

[201] 501 U.S. 32, 52 (1991).

[202] R. Doc. 176-1 at p. 11.

[203] *Chambers*, 501 U.S. at 54-55.

[204] Plaintiff repeats this incorrect assertion in its reply brief. R. Doc. 185 at p. 8.

[205] R. Doc. 176-1 at pp. 12-13.

[206] *Id.* at p. 11.

Louisiana Legislature has expressed its intent to award insureds all costs incurred in their litigation.[207]

Plaintiff does not point to a Louisiana constitutional requirement or a statute mandating that insureds such as Plaintiff receive reimbursement for all costs incurred as a result of an insurer's bad faith. Neither the Louisiana Legislature nor Louisiana courts have expressly indicated that the state has a special interest in taxing all litigation related costs against a bad faith insurer. While Plaintiff argues the language of La. R.S. 22:1892 demonstrates the Legislature's clear intent to award an insured all of its costs, the statute does not unambiguously provide such a result merely by mentioning the recovery of costs. Rather, the statute provides that insureds may recover "costs" generally, without specifying what costs or under what law the costs will be calculated. This lack of specificity undermines the idea that the Louisiana Legislature expressly indicated its intent to provide litigants, including those in federal court, with the ability to recover all case-related costs.

Plaintiff cites *Guillory v. Lee*[208] as support for its statement that the Louisiana Supreme Court "has observed that § 22:1892 creates a separate, substantive cause of action for recovery of costs in addition to penalties and attorney's fees."[209] The issue in that case was whether an insurer behaved arbitrarily and capriciously.[210] The court did not address the insured's award of costs, much less hold that recovery of costs in a Louisiana court should be decided under La. R.S. 22:1892 rather than other provisions of Louisiana law.[211]

---

[207] *Id.* at p. 12.
[208] 2009-0075 (La. 6/26/09), 16 So. 3d 1104, 1126.
[209] R. Doc. 176-1 at p. 10.
[210] *Guillory*, 16 So. 3d at 1126.
[211] *Id.*

31

Plaintiff points out that the Louisiana Third Circuit Court of Appeal in *Guillory v. Louisiana Farm Bureau Cas. Ins. Co.* held that La. R.S. 22:1892 "allows the recovery of all costs incurred by a plaintiff, without restriction to the ordinary taxable costs," which the Plaintiff cites as evidence that Louisiana courts have expressly indicated that insureds have a right to recover all costs resulting from an insurers bad faith.[212] The Magistrate Judge found this case persuasive in her analysis.[213] However, other Louisiana courts, including the Louisiana Third Circuit in a case pre-dating its opinion in *Guillory,* but not discussed in *Guillory*, did not find that La. R.S. 22:1892 creates a separate and distinct measure for recovery of costs; instead, those courts have allowed a plaintiff, who successfully brings a claim under La. R.S. 22:1892, to recover costs under Louisiana's general statutory provisions regulating the recovery of court costs—La. C.C.P. art. 1920, La. R.S. 13:4533, and La. R.S. 13:3666.

Even the Louisiana Third Circuit has done this. In *Mason v. Shelter Mut. Ins. Co.*, the Louisiana Third Circuit, in a decision pre-dating *Guillory*, analyzed what costs an insured, who recovered damages under La. R.S. 22:1892, could receive.[214] In its analysis, the Third Circuit applied La. C.C.P. art. 1920 and La. R.S. 13:3666 to determine the plaintiff's costs.[215] La C.C.P. art 1920 provides that "costs shall be paid by the party cast," while La R.S. 13:3666 states that expert witnesses "shall receive additional compensation,

---

[212] R. Doc. 176-1 at pp. 10-11 (citing *Guillory v. Louisiana Farm Bureau Cas. Ins. Co.*, 2022-634 (La. App. 3 Cir. 10/4/23), 371 So. 3d 1202, 1212). Plaintiff also argues that restricting an insured's award of costs under La. R.S. 22:1892 to those already provided for under Louisiana law would render La. R.S. 22:1892's mention of costs meaningless and superfluous. Although it is a general tenet of Louisiana statutory interpretation that "it is not presumed that the legislature inserted idle, meaningless or superfluous language in a statute," neither Plaintiff nor the Magistrate Judge cite a Louisiana case interpreting La. R.S. 22:1892 the way the Third Circuit did in *Guillory v. Louisiana Farm Bureau Cas. Ins.* Considering the lack of consensus on the proper interpretation of how to award costs under La. R.S. 22:1892, it is not clear that limiting an insured's award of costs under this statute to those already provided for under Louisiana law would render the statute's language concerning costs "meaningless or superfluous."
[213] R. Doc. 203 at p. 27.
[214] 2016-135 (La. App. 3 Cir. 12/28/16), 209 So. 3d 860, 876.
[215] *Id.*

to be fixed by the court. . . ." The *Mason* court found the plaintiff could recover expert witness costs under these general Louisiana provisions regarding costs, not that the plaintiff's recovery of costs associated with the litigation was under La. R.S. 22:1892 because the costs were part of the penalty.[216] Similarly, in *PVCA, Inc. v. Pac. W. TD Fund, LP*, the Louisiana Fourth Circuit Court of Appeal also applied the Louisiana general cost provisions to award a plaintiff expert witness fees when the plaintiff recovered damages under La. R.S. 22:1892.[217] These cases demonstrate that Louisiana courts do not agree, even within the Third Circuit, on whether La. R.S. 22:1892 creates its own basis and measure of recovery of costs for an insurer's bad faith. As a result, this Court finds the Louisiana Legislature and the Louisiana courts have not expressed a strong special interest in allowing insureds proceeding under La. R.S. 22:1892 to recover all court-related costs under that statute.

Moreover, in *Lifepoint Church of Sulphur v. Church Mut. Ins. Co. S.I.,* a federal decision addressing this specific issue, a judge in the Western District of Louisiana found that, even when a plaintiff recovers under La. R.S. 22:1892, federal law applies to the taxation of costs.[218] In that case, the judge found that, absent an express indication otherwise by the state legislature or state courts, the award of costs presents a procedural question to which courts should apply federal law.[219] That court then calculated the plaintiff's costs award under 28 § U.S.C. 1920.[220] The only other federal authority this Court has located agrees that the Louisiana Legislature and Louisiana courts have not

---

[216] *Id.*

[217] 2021-0753 (La. App. 4 Cir. 7/13/22), 366 So. 3d 243, 248–49, *writ denied*, 2022-01220 (La. 11/8/22), 362 So. 3d 423.

[218] *Lifepoint Church of Sulphur v. Church Mut. Ins. Co. S.I.,* Judge Cain's Memorandum Order, ECF No. 2:22-cv-02080 122 pp. 1-2.

[219] *Id.* at p. 2.

[220] *Id.*

expressly indicated a special interest in awarding an insured costs under La. R.S. 22:1892 that would justify replacing federal law with state procedural law in a diversity case.

Thus, even under an *Erie* analysis, *Cates* requires the Court to apply federal law to calculate Plaintiff's award of costs in this diversity action.[221] Binding Fifth Circuit precedent requires that the Louisiana Constitution, the Louisiana Legislature, or Louisiana courts must have *expressly* indicated a special interest in providing litigants with recovery of costs in order for a party in a federal diversity action to recover costs under state law.[222] In *Henning*, the Fifth Circuit found such an express constitutional requirement was present, allowing landowners to receive part of their costs incurred in retaining experts, but only because the Louisiana Constitution required that property owners in eminent domain proceedings receive "just compensation."[223] The Fifth Circuit has specifically limited the application of *Henning* to its facts, a condemnation case.[224]

Accordingly, the Court will sustain the Defendant's objection to the Magistrate Judge's recommendation and award Plaintiff costs under Fed R. Civ. P. Rule 54(d) and 28 U.S.C. § 1920.

## CONCLUSION

The Court, having considered the record, the applicable law, relevant filings, and the Magistrate Judge's Report and Recommendation, **DECLINES TO ADOPT** the Magistrate Judge's findings of fact and conclusions of law with respect to the reasonableness of three of Plaintiff counsel's hourly rates, Plaintiff counsel's exercise of billing judgment, and the award of Plaintiff's costs under Louisiana law. The Court

---

[221] *See Cates*, 928 F.2d at 689.
[222] *Id.*
[223] 387 F.2d 264, 267 (5th Cir. 1968).
[224] *Cates*, 928 F.2d at 689.

**ADOPTS** the Magistrate Judge's findings of fact and conclusions of law that Plaintiff's award of attorneys' fees need not be reduced for use of block billing.

**IT IS ORDERED** that Plaintiff submit a supplemental memorandum detailing the attorneys' fees and costs it seeks in light of this order and reasons on or before **Wednesday, August 19, 2026**. The memorandum should include a calculation of Plaintiff's attorneys' fees considering the hourly rates this Court has awarded for the work of Ms. Gauthier, Mr. Gilbert, and Ms. Ball. The Court will then make a 5% reduction in the total fees for billing judgment. In addition, the memorandum should detail the costs Plaintiff seeks to recover under federal law.

**IT IS FURTHER ORDERED** that Defendant may file an opposition to Plaintiff's supplemental memorandum on or before **Monday, August 24, 2026**.

**New Orleans, Louisiana, this 10th day of August, 2026.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**