**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RAYNE MEMORIAL UNITED METHODIST CHURCH,**<br>**Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-4129** |
| **CHURCH MUTUAL INSURANCE COMPANY, S.I.,**<br>**Defendant** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is a motion for reconsideration filed by Plaintiff Rayne Memorial United Methodist Church.[1] Defendant Church Mutual Insurance Company, S.I., filed an opposition.[2] Plaintiff filed a reply.[3]

## BACKGROUND

This matter arises from a Hurricane Ida insurance coverage dispute. Plaintiff sued Defendant on August 24, 2023 for breach of contract, as well as for statutory penalties and attorneys' fees pursuant to La. R.S. § 22:1892 and La. R.S. § 22:1973.[4] Plaintiff alleges Defendant issued an insurance policy to cover Plaintiff's property on St. Charles Avenue in New Orleans, Louisiana, and on August 29, 2021, Hurricane Ida struck Southeast Louisiana, damaging several buildings in Plaintiff's church complex.[5] A four-day trial was held from February 2 to February 5, 2026.[6] The trial, and requisite attorney involvement, was extensive and complex. At the end of trial, the jury found in favor of Plaintiff.[7]

---

[1] R. Doc. 219
[2] R. Doc. 220.
[3] R. Doc. 221.
[4] R. Doc. 1.
[5] R. Doc. 1 at ¶¶ 6-9.
[6] R. Docs. 160, 162, 165, 166.
[7] R. Doc. 169.

Plaintiff filed a Motion to Fix Attorneys' Fees and Costs on March 9, 2026.[8] The Court referred Plaintiff's motion to the assigned Magistrate Judge.[9] On June 16, 2026, the Magistrate Judge issued a Report and Recommendation, recommending the Court grant Plaintiff's motion and award Plaintiff $563,002.10 in attorneys' fees and $341,489.41 in costs, the entire amount Plaintiff sought.[10] Defendant objected to the award of both attorneys' fees and costs.[11] Defendant argued the Magistrate Judge's recommendation erred in failing to reduce the award of attorneys' fees because Plaintiff did not provide satisfactory evidence showing their rates were reasonable and they exercised appropriate billing judgment and practices.[12] As for costs, Defendant argued the Magistrate Judge incorrectly calculated costs under La R.S. § 22:1892 instead of the federal statute 28 U.S.C. § 1920.[13]

The Court adopted the Magistrate Judge's Report and Recommendation in part and declined to adopt it in part.[14] The Court sustained Defendant's objections regarding the reasonableness of the hourly rates charged by three attorneys.[15] The Court ordered a decrease in rates to be calculated for those three attorneys and also a 5% reduction to Plaintiff's attorneys' fees award for failing to carry its burden of demonstrating that counsel exercised billing judgment.[16] The Court found that Plaintiff's counsel did not provide sufficient evidence detailing the hours they wrote off or the non-billed work of paralegals.[17] The Court adopted the portion of the Magistrate Judge's Report and

[8] R. Doc. 176.
[9] R. Doc. 178.
[10] R. Doc. 203 at p. 31.
[11] R. Doc. 209.
[12] *Id.* at pp. 1-4.
[13] *Id.* at pp. 5-7.
[14] R. Doc. 216.
[15] *Id.* at pp. 7-19.
[16] *Id.* at pp. 14, 19.
[17] *Id.* at p. 19.

Recommendation declining to reduce Plaintiff's attorneys' fees for use of block billing.[18] The Court sustained Defendant's objection to the award of costs under La. R.S. § 22:1892 and ordered that Plaintiff be awarded costs under federal law instead.[19] The Court found, in accordance with Supreme Court precedent in *Berk v. Choy* and *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, that federal law displaced state law since Fed. R. Civ. P. 54(d)(1) directly answers the disputed question regarding costs and the rule is valid under the Rules Enabling Act.[20]

Plaintiff filed this motion for reconsideration on August 24, 2026.[21] Plaintiff asks the Court to reconsider its finding that federal law, not state law, is controlling as to the costs Plaintiff should be awarded.[22] Now, for the first time, Plaintiff argues the Court should have considered the McCarran-Ferguson Act[23] and adopted the Magistrate Judge's Report and Recommendation in full.[24] The McCarran-Ferguson Act, Plaintiff argues, "reverse-preempts federal law," in that it requires state law to prevail over federal law when insurance regulation is concerned.[25] Plaintiff argues that La. R.S. § 22:1892 is an insurance regulation and the McCarran-Ferguson Act applies.[26] Thus, Plaintiff asks this Court to award Plaintiff costs under La R.S. § 22:1892, albeit through a different avenue than previously argued.[27]

---

[18] *Id.* at p. 19-20.
[19] *Id.* at pp. 20-34.
[20] *Id.* at pp. 23-25; *Berk v. Choy*, 607 U.S. 187 (2026); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).
[21] R. Doc. 219.
[22] *Id.* at pp. 1-2.
[23] 15 U.S.C. §§ 1011-1015.
[24] R. Doc. 219 at pp. 1-2.
[25] *Id.* at p. 5.
[26] *Id.* at pp. 6-9.
[27] *Id.*

## LEGAL STANDARD

In the Fifth Circuit, Federal Rule of Civil Procedure 54(b) governs motions for reconsideration of an interlocutory order.[28] Fed. R. Civ. P. 54(b) provides, in relevant part, that

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.[29]

Pointing to Fed. R. Civ. P. 54(b), which states that a decision "that does not end the action . . . may be revised at any time," the Fifth Circuit has further stated "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient even in the absence of new evidence or an intervening change in or clarification of the substantive law."[30] The Fifth Circuit has declared this standard to be "more flexible" than the "heightened standard" under Fed. R. Civ. P. 59(e), which governs motions to alter or amend a *final* judgment.[31] Given that no final judgment has been entered with respect to this Court's order adopting in part and denying in part the Magistrate Judge's Report and Recommendation,[32] this Court will apply the "more flexible" Rule 54(b) standard when evaluating the instant motion for reconsideration.

## LAW AND ANALYSIS

### The McCarran Ferguson Act does not apply to require reverse preemption with respect to the costs provision of La. R.S. § 22:1892.

The costs provision of La. R.S. § 22:1892 provides in relevant part that "failure to

---

[28] *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017).
[29] FED. R. CIV. P. 54(b).
[30] *Austin*, 864 F.3d at 336-37 (citation omitted).
[31] *Id.* at 337.
[32] R. Doc. 216.

make payment shall subject the insurer to a penalty . . . of . . . reasonable attorney fees and costs."[33] In contrast, 28 U.S.C. § 1920 provides a specific listing of costs allowed. The issue in this motion for reconsideration is whether, under the McCarran-Ferguson Act, the Plaintiff is entitled to costs under state law found in La R.S. § 22:1892 or under federal law found in 28 U.S.C. § 1920.[34]

The McCarran-Ferguson Act states in relevant part: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . ."[35] The Supreme Court has explained that the Act was passed in reaction to its decision in *United States v. South-Eastern Underwriters Association*,[36] which held that insurance transactions are subject to federal regulation under the Commerce Clause. Congress' purpose in the Act was to leave in place state systems for regulating and taxing the business of insurance.[37] The Act is an exception to the rule that federal statutes preempt state law.

The Supreme Court in *Securities & Exchange Commission v. National Securities, Inc.* provided guidance as to what conduct falls within the scope of the business of insurance, worth quoting at length:

> The statute [the McCarran-Ferguson Act] did not purport to make the States supreme in regulating all the activities of insurance companies; its language refers not to the persons or companies who are subject to state regulation, but to laws 'regulating the business of insurance.' Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the 'business of insurance' does the statute apply. Certainly the fixing of rates

33 La. R.S. § 22:1892.
34 R. Doc. 219 at pp. 4-9.
35 15 U.S.C. § 1012.
36 *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533 (1944).
37 *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 458-60 (1969).

> is part of this business . . . . The selling and advertising of policies, and the licensing of companies and their agents are also within the scope of the statute. The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the 'business of insurance.' Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they to [sic] must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly are laws regulating the 'business of insurance.'[38]

The Supreme Court in *Union Labor Life Insurance Company v. Pireno* articulated three factors courts should use when determining whether a state law regulates the "business of insurance": (1) "whether the practice in question has the effect of transferring or spreading a policyholder's risk;" (2) "whether the practice is an integral part of the policy relationship between the insurer and the insured;" and (3) "whether the practice is limited to entities within the insurance industry" [henceforth the "*Pireno* factors"].[39] The Supreme Court has noted that none of these *Pireno* factors is determinative in itself.[40] The Fifth Circuit has applied the *Pireno* factors in *Munich American Reinsurance Company v. Crawford*[41] and *American Bankers Insurance Company of Florida. v. Inman*.[42]

The issue in this case is whether La. R.S. § 22:1892 was enacted for the purpose of regulating the business of insurance. As explained by the Supreme Court in *National Securities*, the following are the types of laws that regulate the "business of insurance":

---

[38] *Id.* at 459-460 (alteration in original) (internal citations omitted).
[39] *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982).
[40] *Id.*
[41] *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 590-91 (5th Cir. 1998).
[42] *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006).

the fixing of insurance rates, the selling and advertising of policies, the licensing of companies and their agents, the types of policies that may be issued, and the reliability, interpretation and enforcement of policies.[43] On the other hand, courts have found the following laws *not* to regulate the business of insurance: a direct-action statute allowing an injured victim the right to sue the insured's insurance company directly;[44] a state law forbidding a state's department of insurance from disclosing certain records to third parties;[45] a federal security law regulating the communications a publicly traded insurance company may make.[46]

Applying the first *Pireno* factor to this case, the Court finds that granting costs to a policyholder as the result of a finding of bad faith, as La. R.S. § 22:1892 provides, does not have "the effect of transferring or spreading a policyholder's risk" between the insurer and the insured. The "insurance policy defines the scope of risk assumed by the insurer from the insured," at the time the policy is entered into, not at the conclusion of litigation.[47] Applying the second *Pireno* factor, the Court finds that allowing the recovery of costs is not an "integral" part of the policy relationship between insured and insurer. Instead, the awarding of costs is a procedural remedy that does not substantively affect or regulate the provisions of the policy that governs the relationship of insured and

---

[43] *Nat'l Sec.*, 393 U.S. at 460.

[44] *In re Boy Scouts of Am. & Delaware BSA, LLC*, 642 B.R. 504, 579-584 (Bankr. D. Del. 2022), *supplemented*, No. 20-10343 (LSS), 2022 WL 20541782 (Bankr. D. Del. Sept. 8, 2022), *aff'd*, 650 B.R. 87 (D. Del. 2023), *aff'd in part, rev'd in part, dismissed in part sub nom. In re Boy Scouts of Am.*, 137 F.4th 126 (3d Cir. 2025), and *aff'd*, 650 B.R. 87 (D. Del. 2023).

[45] *United States v. Delaware Dep't of Ins.*, No. CV 20-829 (MN) (CJB), 2021 WL 4453606 at *7-9 (D. Del. Sept. 29, 2021), *aff'd sub nom. United States v. Dep't of Ins.*, 66 F.4th 114 (3d Cir. 2023).

[46] *Nat'l Sec.*, 393 U.S. at 455.

[47] *See Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129-131 (1982) (citations omitted) (explaining that Petitioner's argument that the "transfer of risk from an insured to his insurer actually takes place not when the contract between those parties is completed, but rather only when the insured's claim is settled" is incorrect and "contrary to the fundamental principle of insurance that the insurance policy defines the scope of risk assumed by the insurer from the insured"); *see also In re Boy Scouts*, 642 B.R. at 581 (explaining why a direct action statute does not help spread risk because risk is determined at the time the contract is entered into, not the time of filing).

insured. The third *Pireno* factor, whether the state law is limited to entities within the insurance industry, does favor Plaintiff's argument as La. R.S. § 22:1892 applies only to insurance companies. However, the Supreme Court has held that no one factor is determinative, and given the analysis under the first two factors, the Court finds the balancing of the *Pireno* factors weighs more toward a finding that the costs provision of La. R.S. § 22:1892 was not intended to regulate the "business of insurance."[48]

It has been recognized that "[a]warding costs has for centuries been part of 'the judicial process for enforcing rights and duties recognized by substantive law.'"[49] An award of costs is a far cry from the laws the Supreme Court has found to regulate the insurance business, such as the licensing of companies and agents or the fixing of insurance rates. Such laws directly and substantively regulate the business of insurance, unlike the law in dispute in this case. Other federal courts have found that laws providing only procedural remedies do not regulate "the business of insurance." For example, in *In re Boy Scouts of America & Delaware BSA, LLC*, a federal bankruptcy court found that a direct action statute allowing an injured victim the right to sue the insured's insurance company directly did not "regulate the business of insurance," and thus the McCarran-Ferguson Act did not apply.[50] In that case, the disputed state statute provided a procedural remedy giving a third party the right to sue an insurer but did not otherwise instruct an insurance company how to regulate its business.[51]

This Court will not disturb the findings made in its Order and Reasons.[52]

---

[48] *Pireno*, 458 U.S. at 129.
[49] *Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 946 (10th Cir. 2020) (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, (1941)).
[50] *In re Boy Scouts*, 642 B.R. at 579-584.
[51] *Id.*
[52] R. Doc. 216.

## CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion for Reconsideration is **DENIED**.

**New Orleans, Louisiana, this 15th day of October, 2026.**

_________________________________
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**